[No. G012303. Fourth Dist., Div. Three. Aug. 31, 1992.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
GREGORY ALLEN STURM, Real Party in Interest.

[No. G012309. Fourth Dist., Div. Three. Aug. 31, 1992.]

DANIEL MICHAEL DUFFY, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Michael R. Capizzi, District Attorney, Maurice L. Evans, Chief Assistant District Attorney, John D. Conley, Assistant District Attorney, Kathleen M. Harper and Gregg L. Prickett, Deputy District Attorneys, for Petitioner in G012303 and for Real Party in Interest in G012309.

No appearance for Respondent.

Ronald Y. Butler, Public Defender, Carl C. Holmes, Chief Deputy Public Defender, Thomas Havlena and Allyn Jaffrey, Deputy Public Defenders, for Real Party in Interest in G012303 and for Petitioner in G012309.

## OPINION

**CROSBY, Acting P. J.**—We have consolidated these writ petitions arising from similar pretrial motions in unrelated capital cases to resolve these questions: Do the reciprocal discovery provisions of Penal Code section 1054 et seq. require defense disclosure of penalty phase evidence? *Yes.* Are they constitutional? *Yes.*

I

In both cases the prosecution served informal requests for discovery pursuant to Penal Code section 1054.5, subdivision (b), part of Proposition 115's "Crime Victims Justice Reform Act." Defense counsel refused to cooperate, and the district attorney brought motions to compel the identification of witnesses to be called in the penalty phases. Defendants answered

that such discovery was not authorized under the statutory scheme and would violate various constitutional rights if it were. ■■ ■■ ■ The prosecution motion was granted in Daniel Michael Duffy's case[1], but denied in that of Gregory Allen Sturm.

Proposition 115, an initiative measure on the June 5, 1990, ballot, was designed to eliminate all or many of the rights of criminal defendants under the state Constitution. (See Prop. 115, § 3.)[2] Among many other things, it added a constitutional provision calling for reciprocal discovery in criminal cases.[3] (Cal. Const., art. I, § 30.) In addition, implementing statutes were enacted by the initiative: Penal Code section 1054 provides, "This chapter shall be interpreted to give effect to all of the following purposes: [¶] (a) To promote the ascertainment of truth in trials by requiring timely pretrial discovery. [¶] (b) To save court time by requiring that discovery be conducted informally between and among the parties before judicial enforcement is requested. [¶] (c) To save court time in trial and avoid the necessity for frequent interruptions and postponements. [¶] (d) To protect victims and witnesses from danger, harassment, and undue delay of the proceedings. [¶] (e) To provide that no discovery shall occur in criminal cases as except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States."

The Penal Code statutory scheme requires disclosure by both the prosecution (§§ 1054.1-1054.7) and the defense (§ 1054.3), imposes a continuing duty to disclose on each (§ 1054.7), specifies certain materials not subject to disclosure (§ 1054.6), provides for protective orders (§ 1054.7), and authorizes sanctions to enforce compliance (§ 1054.5, subd. (c)). The prosecution is not entitled to any form of discovery not available to the defense.

---

[1]No stays were sought, and the cases went to trial during our consideration of the writ petitions. In an odd coincidence, both involved grisly multiple executions; but each jury deadlocked in the penalty phase. Sturm will face a retrial of the penalty phase (see Pen. Code, § 190.4, subd. (b)); Duffy, it appears, will not. Consequently, Duffy's petition is moot and the district attorney's nearly so (see fn. 14, *post*); but the issues presented are of considerable public interest and likely to recur in circumstances where, as here, there may be insufficient time to afford full appellate review. Thus, we resolve the questions presented. (*Leeb* v. *DeLong* (1988) 198 Cal.App.3d 47, 52 [243 Cal.Rptr. 494].)

[2]Section 3 purported to add a new provision to the state Constitution, article I, section 24. But in *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 351 [276 Cal.Rptr. 326, 801 P.2d 1077], the Supreme Court held section 3 amounted "to a constitutional revision beyond the scope of the initiative process" and invalidated it. *Raven* also held the remaining provisions were severable and withstood various constitutional challenges. (*Id.* at p. 356.)

[3]For a good recap of the roller-coaster history of reciprocal discovery in California criminal law and the jurisprudence of the California and United States Supreme Courts, see *Hobbs* v. *Municipal Court* (1991) 233 Cal.App.3d 670 [284 Cal.Rptr. 655].

■■■ These are the provisions most important to our analysis:[4] Article I, section 30, subdivision (c) of the state Constitution states, "In order to provide for fair and speedy trials, discovery in criminal cases shall be reciprocal in nature, as prescribed by the Legislature or by the [P]eople through the initiative process." The measure was implemented in Penal Code, section 1054.3, subdivision (a), which requires the defense to "disclose to the prosecuting attorney . . . [¶] [t]he names and addresses of persons, other than the defendant, he or she intends to call as witnesses *at trial* . . . ." (Italics added.)

## II

■ Defendants argue the word "trial" is ambiguous and should not be construed to apply to the penalty phase of a capital case.[5] "Trial," we are told, does not include proceedings such as restitution hearings, speedy trial and suppression motions, motions to disclose confidential informants, Penal Code section 1368 sanity hearings, or sentencing hearings. The syllogism is complete with the assertion that the penalty phase is merely a sentencing seance where "the jury decides between one of two punishments."

The district attorney more convincingly responds the penalty hearing is but one of three possible phases, i.e., guilt, sanity, and penalty, of a single trial. Penal Code section 190.1 supports that assertion. It states in part, "A case in which the death penalty may be imposed pursuant to this chapter shall be *tried* in separate *phases*. . . ." (Italics added.) "Tried," of course, implies "trial." And "phase" is a word of common understanding and obviously means, in the present context, "an aspect or part (as of a situation or activity) being subjected to consideration." (Webster's New Internat. Dict.

---

[4]The rules to be employed in this exercise are so familiar they can be trotted out in the margin. Our analysis is guided by established principles of statutory construction equally applicable to the interpretation of initiatives. (*Center for Public Interest Law* v. *Fair Political Practices Com.* (1989) 210 Cal.App.3d 1476, 1484 [259 Cal.Rptr. 21].) Our primary interpretative task is to determine the lawmakers' intent. (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) In the case of a constitutional provision enacted by the voters, it is their intent which governs. (*Kaiser* v. *Hopkins* (1936) 6 Cal.2d 537, 538 [58 P.2d 1278].) We turn first to the language used, giving the words their ordinary and generally accepted meaning. (*People* v. *Knowles* (1950) 35 Cal.2d 175, 182-183 [217 P.2d 1]; see Pen. Code, § 4.)

[5]The ballot materials accompanying Proposition 115 are of little assistance in interpreting its language. The defense argues, "The official ballot says nothing regarding any major change in California Death Penalty Law. [Citation.] Not one word regarding a change in penalty phase discovery." The measure *does* say, "Changes the rule under which prosecutors and defense attorneys must reveal information to each other in their prospective criminal cases." The word "cases" suggests a broad, rather than narrow, interpretation of the discovery provisions of Proposition 115. The use of the word "case" in Penal Code section 190.1, a provision discussed in the next paragraph in the text, is similarly significant.

(3d ed. 1981) p. 1694.) Thus, under the plain language of the statutory scheme in place when Proposition 115 was enacted, the jury's penalty determination was a part of the trial.[6]

Moreover, the stated purpose of Proposition 115 is "to restore balance to our criminal justice system." (Prop. 115, § 1, subd. (c).) To accomplish that goal to the greatest extent possible in a capital case, the penalty phase would have to be included in the reciprocal discovery provision.

Our conclusion finds persuasive support in *People* v. *Thompson* (1990) 50 Cal.3d 134 [266 Cal.Rptr. 309, 785 P.2d 857], a decision that appeared a few months before Proposition 115 was adopted. (See also, *People* v. *Breaux* (1991) 1 Cal.4th 281, 311, fn. 10 [3 Cal.Rptr.2d 81, 821 P.2d 585].) In order to resolve the meaning of "trial" in the context of the notice requirement of Penal Code section 190.3 (see fn. 8, *post*), the justices were faced with a task similar to our own: "As this court explained in *People* v. *Robertson* [1989] 48 Cal.3d 18, 45-46 [255 Cal.Rptr. 631, 767 P.2d 1109]: 'The meaning of "trial" varies depending on the context of its use. (See generally *People* v. *Overstreet* (1986) 42 Cal.3d 891, 896[7] [231 Cal.Rptr. 213, 726 P.2d 1288] [lead opn. of Broussard, J.], 902-903 [dis. opn. of Grodin, J., Lucas and Panelli, JJ., conc.].) . . . Where the question of notice arises in the context of the initial trial *in which the guilt and penalty phases occur in immediate sequence and thus are part of a unitary proceeding, we have construed 'trial' as the whole proceeding;* hence notice must be given in advance of the guilt phase. (*People* v. *Miranda* (1987) 44 Cal.3d 57, 96-97 [241 Cal.Rptr. 594, 744 P.2d 1127].) Where, however, as here, the notice issue arises in the context of a second trial—i.e., a 'retrial'—[] 'trial' must reasonably be construed to mean the judicial proceeding in which the matter in issue is again examined and resolved. Only this construction serves both the evident purpose of the notice provision—viz., 'to advise an accused of the evidence against him so that he may have a reasonable opportunity to prepare a defense at the penalty trial' (*Miranda, supra,* at p. 96 [1978 law])—and the overriding purpose of section 190.3 that the jury 'be made aware of all of the

---

[6]The Sixth District has just issued its opinion reaching a similar disposition of the issue we consider today, rejecting many of the same defense arguments for the same reasons. (*People* v. *Superior Court* (*Mitchell*) (1992) 13 Cal.App.4th 1385 [11 Cal.Rptr.2d 400], review granted Nov. 12, 1992 (S026362).)

[7]*People* v. *Overstreet* (1986) 42 Cal.3d 891 [231 Cal.Rptr. 213, 726 P.2d 1288], a three-one-three-decision, dealt with a since amended crime-bail-crime statute. It held "trial" meant only the guilt determination portion of the proceedings. The plurality reached this result by reading "the statute as favorably to the defendant as its language and the circumstance of its application reasonably permit." (*People* v. *Overstreet, supra,* 42 Cal.3d at p. 896; cf. Pen. Code, § 4.) But the new convictions were not for murder, and there was no penalty phase preceding the sentencing hearing left to try in that case. Consequently, even if *Overstreet* remains good law, *Thompson* has a more logical application here in that it defined "trial" in the context of a capital case.

factors bearing on the penalty decision' (*People* v. *Jennings* [(1988)] 46 Cal.3d [963,] 987 [251 Cal.Rptr.278, 760 P.2d 475]). We conclude, therefore, that the 'trial' to which former section 190.3 refers embraces the original trial, as defined above, or the retrial, be it of the entire proceeding or the penalty phase only." (*People* v. *Thompson, supra,* at pp. 177-178, italics added.)

We note Supreme Court opinions frequently interchange the terms "penalty phase" and "penalty trial." But *Thompson* compels a conclusion that the guilt and penalty phases are part of a "unitary proceeding" and the words "at trial" should be construed to mean the entire proceeding, including any retrial of an individual phase. This interpretation follows the broad and express purpose of the discovery statute, i.e., "[t]o promote the ascertainment of truth." (Pen. Code, § 1054, subd. (a).)

The defense claim that the "penalty phase does not address itself to any ultimate truth" is disingenuous. True, guilt has been determined, but the life or death decision in a capital case hinges on a series of additional intermediate truths. The jury must sift through the facts in the penalty phase, just as it does when it decides guilt. The panel must also evaluate the substance and circumstances of the defendant's criminal record, "character, background, history, mental condition and physical condition." (Pen. Code, § 190.3.) A defendant is no more entitled to the opportunity to present false, misleading, or otherwise questionable evidence in the penalty phase without fear of detection than any other part of the trial.

We are next told that because *some* of the rights normally associated with the guilt phase (e.g., trial by jury and proof beyond a reasonable doubt) are not constitutionally required in the penalty phase, the latter cannot be considered part of the trial. Not so. Even if it lacks feathers, a waddle, or a quack, it still might be a duck. (*County of Fresno* v. *State of California* (1991) 53 Cal.3d 482, 490 [280 Cal.Rptr. 92, 808 P.2d 235] (conc. opn. of Arabian, J.).) The penalty phase is the "judicial proceeding in which the matter at issue [i.e., life or death] is [] examined and resolved." (*People* v. *Thompson, supra,* 50 Cal.3d at pp. 177-178, internal quotation marks omitted.) It is an integral part of a capital prosecution. Accordingly, we conclude the word "trial" encompasses both the guilt phase and the penalty phase in a capital case and the reciprocal discovery provisions announced in Penal Code section 1054 apply in this context.

While we express no opinion concerning whether allowing reciprocal discovery of penalty phase evidence in capital cases will produce either a net cost or benefit to the system, there will be some advantages, certainly. It will

likely "save court time and avoid the necessity for frequent interruptions and postponements" (Pen. Code, § 1054, subd. (c)) because the prosecution can interview and investigate penalty phase witnesses before they are called. Thus, if the parties cooperate, discovery of penalty phase witnesses should usually expedite the process.

Nothing in the statutory scheme, however, prohibits the defense from responding to a request for disclosure with a good faith explanation that no decision has yet been made as to which witnesses it will call at the penalty phase (see Pen. Code, §§ 1054.3, 1054.5, 1054.7). The trial court, in its sound discretion, can sort through those kinds of problems, just—as we shall explain—as it can and should prevent prosecutorial abuse of the new rules.

### III

In a related contention, defendants argue Penal Code section 190.3 "provides a penalty phase discovery procedure separate and apart from normal discovery procedures" and notes, "[a] settled rule of statutory construction precludes prosecution under a general statute when a more specific one describes the conduct involved."[8] (*Finn* v. *Superior Court* (1984) 156 Cal.App.3d 268, 271 [202 Cal.Rptr. 732]; see 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Introduction to Crimes, § 62, p. 80; *People* v. *Gilbert* (1969) 1 Cal.3d 475 [82 Cal.Rptr. 724, 462 P.2d 580]; *People* v. *Swann* (1963) 213 Cal.App.2d 447 [28 Cal.Rptr. 830].)

Analogizing to the *Swann-Gilbert* rule, the defense contends, "Because Penal Code section 190.3 specifically addresses what shall take place regarding discovery in a penalty phase context, that code section is controlling and applies instead of any of [Penal Code section] 1054's provisions." We disagree. Section 1054, subdivision (e) precludes *nonstatutory* bases of discovery; it does not suggest "other express statutory provisions" preempt or supersede discovery under section 1054 et seq. As our Supreme Court has explained, "[t]he apparent intent underlying [section 190.3] notice [] is to afford capital defendants *notice of the evidence actually to be used at the penalty phase without the necessity of resort to the discovery procedures* [used] to establish guilt . . . ." (*People* v. *Jennings* (1988) 46 Cal.3d 963, 987 [251 Cal.Rptr. 278, 760 P.2d 475], italics added.)

---

[8]Penal Code section 190.3 states in part, "Except for evidence in proof of the offense or special circumstances which subject a defendant to the death penalty, no evidence may be presented by the prosecution in aggravation unless notice of the evidence to be introduced has been given to the defendant within a reasonable period of time as determined by the court, prior to trial. Evidence may be introduced without such notice in rebuttal to evidence introduced by the defendant in mitigation." Penal Code section 1054, subdivision (e) adds, "no discovery shall occur in criminal cases except as provided by this chapter [and] *other express statutory provisions* . . . ." (Italics added.)

Penal Code section 190.3 has nothing to do with prosecutorial discovery. Rather, it "seeks to ensure that [a] defendant will not be surprised at trial by aggravating matters of which he received no advance warning. This purpose is accomplished by requiring the prosecution to reveal any matters it may present, and by *excluding* any proffered incidents of which the defense was not apprised." (*People* v. *Keenan* (1988) 46 Cal.3d 478, 525 [250 Cal.Rptr. 550, 758 P.2d 1081].) The prosecutor's rights and responsibilities under these sections are "wholly independent" of one another (*Izazaga* v. *Superior Court* (1991) 54 Cal.3d 356, 378 [285 Cal.Rptr. 231, 815 P.2d 304], italics omitted), and in this sense the provisions are not in conflict.

The defense also complains, "The sanction sections of [Penal Code section] 1054.5 and [section] 190.3 are directly in conflict. [Section] 1054.5 creates an affirmative obligation on defendant to make an informal request for penalty phase evidence before the [P]eople's obligation arises. Without such request, the [P]eople are free to withhold all penalty phase evidence. [Section] 1054.5 [subdivision] (b) would allow [them] t[he] evidence of which they have never given notice. A court would be free to sanction a prosecutor one dollar and then allow introduction of the evidence. If the new discovery chapter governs penalty phase evidence, capital defendant[s] have unwittingly been stripped of their due process rights embodied in Penal Code section 190.3."

We cannot agree. Violation of Penal Code section 190.3 breaches an independent prosecutorial duty and warrants a separate sanction. There is no irreconcilable conflict. The prosecution has no obligation to notify the defense of evidence in rebuttal to mitigation under section 190.3, presumably because it does not know how the defense will use its witnesses or evidence, yet is required under Penal Code section 1054.1 to provide names of witnesses it will call in rebuttal. (*Izazaga* v. *Superior Court, supra*, 54 Cal.3d at p. 375.) In neither case is the prosecution obliged to turn over names of "witnesses it [does not] reasonably anticipate[] it is likely to call." (*Id.* at p. 376, fn. 11.)

Finally, it is urged that the absence of a defense obligation to disclose mitigating evidence in Penal Code section 190.3 is controlling. (See *In re Fain* (1983) 145 Cal.App.3d 540, 550 [193 Cal.Rptr. 483].) ■ But the interpretative maxim "*expressio unius est exclusio alterius*" only applies where there is ambiguity or uncertainty in a single statute. (*Ibid.*) Section 190.3 does not require defense disclosure of mitigating evidence; Penal Code section 1054.3 *does*. We are, consequently, compelled to conclude Proposition 115 did bring reciprocal discovery to the penalty phase of capital cases.

## IV

We now turn to defendants' constitutional attack[9] *In Izazaga* v. *Superior Court, supra,* 54 Cal.3d 356, our Supreme Court rejected various challenges to the constitutionality of Proposition 115. Specifically, the court found the initiative did no violence to the federal or state privilege against self-incrimination or the rights to due process and counsel.

■ Defendants, however, assert compelled disclosure of penalty phase evidence violates fundamental principles of due process. Defense evidence, it is urged, "must be protected in order to ensure that fair [procedures] are utilized in a penalty phase." The right to present a defense and witnesses on defendants' behalf is a "fundamental element of due process," and that right will be violated if state representatives persuade defense witnesses not to testify.

We note the due process clause has relatively "little to say regarding the amount of discovery which the parties must be afforded . . . ." (*Wardius* v. *Oregon* (1973) 412 U.S. 470, 474 [37 L.Ed.2d 82, 87, 93 S.Ct. 2208].) In fact, "nothing in the Due Process Clause precludes States from experimenting with systems of broad discovery designed to achieve these goals. 'The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as "due process" is concerned, for [a rule] which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence.'" (*Ibid.,* quoting *Williams* v. *Florida* (1970) 399 U.S. 78 [26 L.Ed.2d 446, 90 S.Ct. 1893].)

Defendants' claims are, in essence, based on an in terrorem argument, potential prosecutorial misconduct. In support of their position, defendants offer affidavits from counsel in another capital case detailing alleged abuse of the discovery process by one of the district attorney's investigators.[10] He allegedly "destroyed what rapport the defense had cultivated" with a potential witness; ergo, no penalty phase discovery should be allowed in *any* case.

This contention would support elimination of any prosecution discovery, contrary to Proposition 115 and the modern jurisprudence of the United

[9]A note from the devil's advocate: If the reciprocal discovery provisions are unconstitutional as applied to the penalty phase, how can Sturm be retried? The prosecution knows a great deal more of the defense strategy now, presumably, than it would have obtained through discovery.

[10]"Integrity without knowledge is weak and useless, and knowledge without integrity is dangerous and dreadful." (Oxford Dict. of Quotations (3d ed. 1979) p. 282, quoting Dr. Samuel Johnson, from his chapter on Rasselas in Lives of the English Poets (1759).)

States Supreme Court.[11] The sky will not fall. Either the district attorney's office will police any abuse or the courts will do so at the prosecution's considerable inconvenience, we expect. Nothing could be more outrageous than an attempt to intimidate a witness for either side in a capital case, and trial judges must swiftly and surely rectify abuses. (See also Pen. Code, § 128.) To summarize, discovery of penalty phase evidence may lead to a violation of due process,[12] but the procedure itself is not one.

## V

■ Defendants next contend penalty phase discovery runs afoul of the attorney work product doctrine.[13] (See *In re Jeanette H.* (1990) 225 Cal.App.3d 25 [275 Cal.Rptr. 9].) In *Jeanette H.* our colleagues in the Fifth District held a list of intended witnesses to be called at trial is attorney work product entitled to limited protection: "In California, courts have identified attorney work product as material which is derivative in character, not ultimate facts but material compiled by the attorney in preparation of his or her case. [Citation.] One appellate court has expressly held a list of intended witnesses is derivative in nature and thus is protected attorney work product during the discovery state of litigation. [¶] . . . *City of Long Beach* [v. *Superior Court* (1976) 64 Cal.App.3d 65] . . . recognizes the exact witnesses an attorney may call at trial depends on what the attorney considers to

---

[11]For the same reasons, the defense has not demonstrated that penalty phase discovery would violate the Sixth Amendment compulsory due process clause in every case. One egregious violation does not give rise to an irrebuttable presumption of official misconduct now or in the future. (Cf. *United States* v. *Smith* (D.C. Cir. 1973) 478 F.2d 976, 979.)

[12]The defense also complains the "absence of fair procedures violates . . . the Eighth Amendment's proscription against cruel and unusual punishment." Defendants do not cite, nor has our research revealed, any authority suggesting penalty phase discovery constitutes any sort of punishment, cruel, unusual, or otherwise. To the contrary, full disclosure should heighten "reliability in the determination that death is the appropriate punishment in a specific case." (*Woodson* v. *North Carolina* (1976) 428 U.S. 280, 305 [49 L.Ed.2d 944, 96 S.Ct. 2978].)

[13]Code of Civil Procedure section 2018 (formerly § 2016) codified the common law work product doctrine as developed in civil cases following *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 399-401 [15 Cal.Rptr. 90, 364 P.2d 266]. Pursuant to section 2018, attorney work product is nondiscoverable unless the court determines denial of discovery will unfairly prejudice the party seeking discovery or will result in an injustice. (See subd. (b).) Moreover, any writing that reflects "an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable *under any circumstances.*" (Subd. (c), italics added.)

The work product doctrine applies to both criminal and civil cases, although not necessarily in the same fashion. In civil cases the parties may obtain "the identity and location of persons having knowledge of any discoverable matter" through discovery. (Code Civ. Proc., § 2017, subd. (a); see also Code Civ. Proc., former § 2016, subd. (b) ["the identity and location of persons having knowledge of the relevant facts" is discoverable] and *Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d at p. 372.) No comparable procedure exists in the criminal arena. (See *Izazaga* v. *Superior Court, supra,* 54 Cal.3d at p. 381.)

be important and relevant facts. The decision to call or not call a witness is made after consideration of the strengths and weaknesses of a case and the legal theory chosen by the attorney. Selection of the witnesses through whom the attorney wishes to present his or her case is an intimate part of the attorney's mental processes." (225 Cal.App.3d at p. 32.)

But the court also noted the "rationale underpinning the work product doctrine *does not preclude an ordered exchange of witness lists shortly before trial.* The work product rule is intended to encourage thorough preparation for trial and to prevent one attorney from taking advantage of another's industry and effort." (225 Cal.App.3d at p. 36, italics added.) We also note, "There is no privilege for attorney work product in the California Constitution. Because the work product doctrine is not constitutionally founded, there is no basis for a facial challenge to the constitutionality of the new discovery chapter on work product grounds." (*Izazaga* v. *Superior Court, supra,* 54 Cal.3d at p. 381.) Thus, the more specific statutory scheme imposed by Proposition 115 would prevail in any event.

Moreover, new Penal Code section 1054.6 protects the work product privilege: "Neither the defendant nor the prosecuting attorney is required to disclose any materials or information which are work product as defined in subdivision (c) of Section 2018 of the Code of Civil Procedure, or which are privileged pursuant to an express statutory provision, or are privileged as provided by the Constitution of the United States." *Izazaga* held Proposition 115's intent was to recognize the "core" work product privilege, i.e., "[a]ny writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories" (Code Civ. Proc., § 2018, subd. (c); *People* v. *Boehm* (1969) 270 Cal.App.2d 13, 21-22 [75 Cal.Rptr. 590]) and not the broader qualified work product privilege. (*People* v. *Izazaga, supra,* 54 Cal.3d at p. 382, fn. 19.) We are in no position to disagree. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

## VI

Defendants also claim penalty phase discovery denies capital defendants equal protection of the laws because their "similarly situated" noncapital colleagues are not required to make presentencing disclosures. But defendants offer no authority in support of this argument. And by definition, a defendant in a noncapital case is not similarly situated to his capital case counterpart for the obvious reason that the former's life is not on the line.

All capital defendants, as a discrete class, receive the same treatment, frequently obtaining extra protections not afforded other accuseds, such as the right to two defense attorneys (Pen. Code, § 987, subd., (d)). For purposes of equal protection, no more is required.

## VII

■ Finally, defendants complain that penalty phase discovery compromises the right to effective assistance of counsel under the Sixth Amendment. *Izazaga* is dispositive of this issue as well. The opinion notes, "nothing in the new discovery chapter [penalizes] exhaustive investigation [or] chill[s] trial preparation . . . such that criminal defendants would be denied the right to effective assistance of counsel under the Sixth Amendment." (*Izazaga* v. *Superior Court, supra,* 54 Cal.3d at p. 379.)

Defendants insist a "helpful penalty phase witness may be a harmful guilt phase witness" and "penalty phase evidence embraces impressions, feelings and memories. [] It cannot be analyzed in the same breath as evidence relating to guilt." This is true, perhaps, but a protective order will provide a sufficient remedy for the first contingency pending the guilt phase determination. (See Pen. Code, § 1054.6.) An in camera proceeding may be invoked to resolve such a problem, for example. (See Pen. Code, § 1054.7.) In any event, trials frequently present difficult tactical choices. A witness may be helpful on one aspect of the case, but not so good on another. Such dilemmas are routinely faced—and resolved—by trial attorneys.

As to the second point, we note penalty phase discovery is also aimed at testimonial " 'half-truths.' " (*Izazaga* v. *Superior Court, supra,* 54 Cal.3d at p. 379.) The memories of witnesses can be more thoroughly tested with full disclosure on both sides. And, to the extent "impressions and feelings" are relevant in the death determination calculus (see Pen. Code, § 190.3, subd. (k)), their genesis should be fair game as well. Division One put it this way: "An important aim of discovery is to enhance the search for truth while at the same time reduce, if not eliminate, the elements of surprise and gamesmanship from the proceedings." (*Hobbs* v. *Municipal Court, supra,* 233 Cal.App.3d at p. 690.) In sum, the will of the electorate is clear enough and there is no constitutional infirmity in the discovery scheme as applied to the penalty phase of a capital trial.

Let a peremptory writ of mandate issue as prayed in G012303.[14] The writ petition is denied in G012309.

Sonenshine, J., and Moore, J., concurred.

---

[14]Because there may be a new penalty phase and new defense witnesses or evidence discovered beforehand, the Sturm petition may not be entirely moot.