[No. S026362. Oct. 18, 1993.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF MONTEREY COUNTY, Respondent;
JOSEPH D. MITCHELL, JR., Real Party in Interest.

## Counsel

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama and Ronald A. Bass, Assistant Attorneys General, Laurence K. Sullivan, Morris Beatus and David D. Salmon, Deputy Attorneys General, for Petitioner.

Edwin L. Miller, Jr., District Attorney (San Diego), Thomas F. McArdle and Paul M. Morley, Deputy District Attorneys, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

James H. Newhouse, Skemp, Dozier & Moser and James H. Dozier for Real Party in Interest.

James S. Thomson, John G. Cotsirilos and Elizabeth Missakian as Amici Curiae on behalf of Real Party in Interest.

## Opinion

LUCAS, C. J.—Proposition 115, adopted by the people at the June 1990 Primary Election, contains a variety of provisions relating to criminal law and procedure, including sections authorizing reciprocal pretrial discovery by the parties to a criminal action. (Pen. Code, § 1054 et seq.; see *Izazaga* v. *Superior Court* (1991) 54 Cal.3d 356 [285 Cal.Rptr. 231, 815 P.2d 304] [hereafter *Izazaga*].) In the present case, we must decide whether and to what extent these discovery provisions are applicable to the penalty phase of a capital trial. As will appear, we conclude that reciprocal discovery is available with respect to penalty phase evidence, and that such discovery ordinarily should be made at least 30 days prior to the commencement of the guilt phase of the trial, but that trial courts are empowered to exercise discretion in an appropriate case to defer disclosure of all or part of the defendant's penalty phase evidence until the guilt phase has been completed.

### I. Facts

In the underlying proceeding, real party in interest (hereafter defendant) is charged with felony murder with special circumstances. (The trial has been stayed pending our review.) The People requested discovery as authorized by Penal Code section 1054.3. (Further statutory references are to the Penal Code unless otherwise indicated.) That section requires the defendant and

his attorney to disclose to the prosecutor the names and addresses of persons he intends to call as witnesses "at trial," together with any relevant statements or reports of those persons, and any real evidence intended to be offered in evidence. Similar disclosures are required of the prosecutor. (§ 1054.1.) Another provision states that "no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States." (§ 1054, subd. (e); see also Cal. Const., art. I, § 30, subd. (c) ["In order to provide for fair and speedy trials, discovery in criminal cases shall be reciprocal in nature . . . ."].)

Defendant refused to provide any discovery pertinent to the penalty phase of the trial. The trial court denied the People's motion to compel discovery on the ground that the reciprocal discovery provisions of Proposition 115 do not apply to the penalty phase of the trial, which is instead governed by the more specific provisions of section 190.3, requiring pretrial notice to the defendant of penalty phase aggravating evidence. The People sought mandate from the Court of Appeal to direct the trial court to compel discovery of materials relevant to the penalty phase pursuant to Proposition 115. The Court of Appeal upheld the People's right to discovery and would have issued the requested writ of mandate. We will affirm the judgment issuing the writ.

## II. AVAILABILITY OF RECIPROCAL DISCOVERY

As noted above, the trial court concluded that section 190.3, with its specific reference to penalty phase evidence, constituted the sole discovery provision applicable to such evidence. Section 190.3 in pertinent part states: "Except for evidence in proof of the offense or special circumstances which subject a defendant to the death penalty, no evidence may be presented by the prosecution in aggravation unless notice of the evidence to be introduced has been given to the defendant within a reasonable period of time as determined by the court, prior to trial. Evidence may be introduced without such notice in rebuttal to evidence introduced by the defendant in mitigation."

■ Defendant, observing that we have construed section 190.3 as requiring production of the *actual evidence* on which the prosecutor intends to rely (see *People* v. *Jennings* (1988) 46 Cal.3d 963, 987 [251 Cal.Rptr. 278, 760 P.2d 475], and cases cited), contends that the section was thus intended to constitute a nonreciprocal discovery provision that would preclude prosecutorial discovery under section 1054.3. The Court of Appeal herein disagreed, finding nothing in section 190.3 that would preclude application of the new

reciprocal discovery provisions. (Accord, *People* v. *Superior Court* (*Sturm*) (1992) 9 Cal.App.4th 172, 181-182 [11 Cal.Rptr.2d 652] [hereafter *Sturm*].) As the Court of Appeal herein observed, section 1054, subdivision (e), quoted above, expresses an intent to allow reciprocal discovery in all criminal cases unless contrary to some "express" statutory provision or the United States Constitution. Because section 190.3 does not by its terms prohibit reciprocal discovery, section 1054, subdivision (e), should apply. We agree with the Court of Appeal.

Although section 190.3 does not affirmatively *authorize* reciprocal discovery, the omission is not significant. At the time section 190.3 was adopted, discovery by the prosecution was precluded by judicial decisions interpreting the state Constitution. (See *Izazaga, supra*, 54 Cal.3d at pp. 369-371, and cases cited.) The state Constitution now expressly provides for reciprocal discovery "in criminal cases." (Cal. Const., art. I, § 30, subd. (c); see also § 1054 [expressing purposes of reciprocal discovery to ascertain truth, save court time, and protect victims and witnesses "in criminal cases"].)

Defendant asserts that the penalty phase is a sentencing proceeding and not part of a criminal "case" or "trial" within the meaning of the foregoing provisions. (See *People* v. *Overstreet* (1986) 42 Cal.3d 891, 896 [231 Cal.Rptr. 213, 726 P.2d 1288] [term "trial" is "ambiguous as to whether it includes proceedings following the determination of guilt prior to sentencing"]; *People* v. *Gilbert* (1944) 25 Cal.2d 422, 428 [154 P.2d 657]; *People* v. *Williams* (1939) 14 Cal.2d 532, 536-537 [95 P.2d 456].) As the People observe, however, we have confirmed that the penalty phase of a capital trial is merely a part of a single, unitary criminal proceeding. (*People* v. *Robertson* (1989) 48 Cal.3d 18, 45-46 [255 Cal.Rptr. 631, 767 P.2d 1109].) In *Robertson*, construing the similar notice provision in former section 190.3, we observed that "[w]here the question of notice arises in the context of the initial trial in which the guilt and penalty phases occur in immediate sequence and thus are part of a unitary proceeding, *we have construed 'trial' as the whole proceeding; hence notice must be given in advance of the guilt phase.* . . . We conclude, therefore, that the 'trial' to which former section 190.3 refers embraces the original trial, as defined above, or the retrial, be it of the entire proceeding or the penalty phase only." (*People* v. *Robertson, supra*, 48 Cal.3d at pp. 45-46, italics added; see also *People* v. *Hardy* (1992) 2 Cal.4th 86, 94-95 [5 Cal.Rptr.2d 796, 825 P.2d 781].)

As the Court of Appeal herein observed, "[a]lthough *Robertson* did not consider the issue before us, its language embracing the penalty phase within the concept of the 'trial' under section 190.3 is authority that the proceeding

is unitary and should not be arbitrarily broken down into distinct and separate procedures. From this it follows that section 1054, which refers to regulation of discovery in a criminal trial, applies to the penalty phase, which is part of the trial." (See also § 190.1 ["A case in which the death penalty may be imposed . . . shall be tried in separate phases . . . ."]; *People* v. *Breaux* (1991) 1 Cal.4th 281, 311-312, and fn. 10 [3 Cal.Rptr.2d 81, 821 P.2d 585] [general discovery principles apply to penalty phase evidence]; *Izazaga, supra,* 54 Cal.3d at p. 375 ["The phrase 'at trial' means exactly that—at the trial, not merely during the prosecution's case-in-chief."].)

*Sturm, supra,* 9 Cal.App.4th at page 179, is directly on point, holding that, "under the plain language of the statutory scheme in place when Proposition 115 was enacted, the jury's penalty determination was a part of the trial. [¶] Moreover, the stated purpose of Proposition 115 is 'to restore balance to our criminal justice system.' [Citation]. To accomplish that goal to the greatest extent possible in a capital case, the penalty phase would have to be included in the reciprocal discovery provision." (Fn. omitted.)

Defendant, disagreeing with *Sturm,* analogizes the penalty phase of a capital trial to a "sentencing" hearing in a noncapital trial, and argues that because discovery is unavailable at sentencing hearings, it is unfair, and a denial of equal protection, to allow it in capital cases. Although the issue is not presently before us, *Sturm* suggested that reciprocal discovery may indeed be available as to sentencing proceedings under the new provisions of Proposition 115. The broad language of section 1054.3, requiring disclosure of evidence to be elicited "at the trial," could well encompass such proceedings. (See *Sturm, supra,* 9 Cal.App.4th at p. 185.)

The Court of Appeal herein acknowledged that "There are cases holding that sentencing hearings differ from trials in some respects. For instance, strict evidentiary rules do not always apply at sentencing hearings and rules of procedure may differ. [Citations.] Also, in capital cases, evidence at the penalty phase is specially regulated by statute. (See § 190.3.) However, the fact that sentencing procedures may differ from procedures at the guilt phase does not necessarily imply anything about discovery rights, except perhaps that they may be even broader at the sentencing phase, given the relaxation of traditional strict rules of evidence at that point."

Thus, defendant's concern that penalty phase reciprocal discovery could deny him equal protection is founded on the unsettled and questionable premise that defendants in noncapital cases will not be required to disclose evidence to be revealed at sentencing hearings. In any event, capital case

sentencing, with its relatively unrestricted scope of mitigating evidence the defendant is permitted to offer, cannot readily be compared to ordinary sentencing. As we recently stated in the context of admissibility of "other crimes" evidence, "capital case sentencing involves wholly different considerations than ordinary criminal sentencing . . . . [Citation.] This distinction between capital and noncapital cases adequately justifies the differences in treatment cited by defendant. [Citations.]" (*People* v. *Danielson* (1992) 3 Cal.4th 691, 720 [13 Cal.Rptr.2d 1, 838 P.2d 729]; see also *People* v. *Hardy*, *supra*, 2 Cal.4th at pp. 194-195; *People* v. *Allen* (1986) 42 Cal.3d 1222, 1286-1288 [232 Cal.Rptr. 849, 729 P.2d 115]; *Sturm*, *supra*, 9 Cal.App.4th at p. 185.) For this reason, defendant's equal protection challenge to reciprocal penalty phase discovery must be rejected.

Defendant argues that because an application for investigative funds in a criminal case is confidential pursuant to section 987, subdivisions (c) and (d), and because the new discovery statutes do not require the defense to disclose privileged material (see § 1054.6), penalty phase evidence likewise should be deemed privileged and confidential. We reject the contention. Defendant has not raised a specific claim of privilege or confidentiality as to any material required to be disclosed herein.

Defendant argues that the application of reciprocal discovery at the penalty phase violates the cruel and unusual punishment proscription of the Eighth Amendment. The Court of Appeal herein rejected the claim by observing that "Limitations on mitigating evidence have been found to violate due process (e.g., *Skipper* v. *South Carolina* (1986) 476 U.S. 1 [90 L.Ed.2d 1, 106 S.Ct. 1669]), but a notice requirement is not a limit on substantive evidence. Nor is there any authority whatsoever treating the procedural rules governing criminal trials as 'punishment.' " (Accord, *Sturm*, *supra*, 9 Cal.App.4th at p. 184, fn. 12.) As stated in *Sturm*, "full disclosure should heighten 'reliability in the determination that death is the appropriate punishment in a specific case.' [Citation.]" (*Ibid.*) We agree with that analysis.

Defendant fears that premature disclosure of his penalty phase evidence may jeopardize his defense at the *guilt* phase. The People suggest that such concern is unduly conjectural (see *Izazaga*, *supra*, 54 Cal.3d at p. 379 [doubtful that the defendant would call damaging witnesses to testify on his behalf]). But we can readily conceive of situations in which advance disclosure of the defendant's penalty phase evidence could prejudice his guilt phase presentation. Nonetheless, such potential prejudice constitutes no legal impediment to reciprocal penalty phase discovery, because, as we explain *post* (pt. III), the trial court retains discretion in an appropriate case to defer

all or part of such disclosure to the prosecution until the guilt phase has concluded.

Defendant also suggests that the different standards of proof applicable to the guilt and penalty phases should exclude disclosure of mitigating evidence. He argues that, unlike the guilt phase, in which the People must prove guilt beyond a reasonable doubt, the People have no proof burden as to the ultimate issue of appropriate penalty and, accordingly, have no need for discovery on that issue. Additionally, defendant suggests, the prosecution and defense have "different goals." According to defendant, "While the [guilt phase] trial is essentially 'factual' in character, the function of choosing a penalty is 'inherently moral and normative, not factual.' [Citation.]" At the penalty phase, defendant notes, the defendant seeks to introduce mitigating evidence to support a life verdict, whereas the People focus on aggravating aspects of the case. Thus, reciprocal discovery supposedly "does not assume the same importance" to the prosecution.

We disagree with defendant's purportedly pragmatic analysis of the supposed lesser need for discovery at the penalty phase of a capital case. Despite differing proof burdens and "goals" in the penalty phase, the People nonetheless have a demonstrable need to appraise the defendant's proposed mitigating evidence so that rebuttal evidence may be gathered. And despite the "normative" nature of the penalty decision itself, a substantial part of the mitigating evidence typically adduced by the defendant at the penalty phase concerns such factual matters as the nature of his character and background, the extent of his rehabilitation or remorse, or the existence of any mental defect or disease. Similarly, a significant portion of the prosecutor's aggravating evidence involves the defendant's prior offenses. Thus, whether aggravating or mitigating, the penalty phase evidence may raise disputed *factual* issues, making advance disclosure of the evidence helpful to *both* sides. (See *Sturm*, *supra*, 9 Cal.App.3d at pp. 180-181; cf. *People* v. *Johnson* (1993) 6 Cal.4th 1, 50 [23 Cal.Rptr.2d 593, 859 P.2d 673] [instructing jury on witness credibility is appropriate at penalty phase in light of factual issues presented].)]

In any event, as the Court of Appeal herein recognized, "The issue is not whether section 1054 ought to grant reciprocal discovery at the penalty phase, but whether it does; whether the statute, which expressly provides reciprocal discovery at trials, provides that same right at the penalty phases of trials." We agree with the court's conclusion that reciprocal discovery is available (and, indeed, is constitutionally and statutorily mandated) as to penalty phase evidence.

## III. TIMING OF DISCOVERY

██ Defendant next argues that the prosecution's discovery request is premature because defendant has not yet been convicted, special circumstances have not yet been found, and the penalty phase may never occur. As previously indicated, he fears that advance disclosure of his intended penalty phase evidence may jeopardize his guilt phase defense, potentially violating his privilege against self-incrimination and infringing on his right to a fair trial. We find merit in defendant's position, but we note that any such problems could be largely eliminated by deferring prosecution discovery of defense penalty phase evidence in an appropriate case pending the guilt and special circumstances determinations.

The Court of Appeal likewise acknowledged the legitimacy of defendant's concerns, stating its assumption that the trial court had discretion to defer discovery until the guilt phase was concluded. As the court stated, "We tend to agree that penalty phase discovery so early in the trial does not appear to be a very efficient use of time . . . . Procedural regulation is vested in the first instance in the trial court, and had it denied discovery here as premature, or otherwise disruptive, we would be inclined to defer to its superior knowledge of the parties and the case. However, the denial of discovery here was based solely on the supposed supremacy of section 190.3."

The issue is somewhat more complicated than the Court of Appeal outlined. To resolve the issue, we must consider the interplay of two potentially conflicting provisions. Under section 1054.5, subdivision (b), the party seeking a court order compelling discovery must first make an informal request for disclosure. If opposing counsel fails to comply with this request within 15 days, the proponent of discovery may seek a court order. The court "may make any order necessary to enforce the provisions of this chapter, including, but not limited to, immediate disclosure, contempt proceedings, delaying or prohibiting the testimony of a witness or the presentation of real evidence, *continuance of the matter*, or any other lawful order." (§ 1054.5, subd. (b), italics added.)

Viewed in isolation, the foregoing language is broad enough to authorize appropriate orders deferring penalty phase disclosure to the prosecution pending the jury's determination of the issues of guilt and special circumstances. The italicized phrase "continuance of the matter" reasonably could be construed as permitting continuance of the requested discovery, as well as continuance of trial. (See also § 1054.6 [protecting from disclosure any matter privileged under express statutory provisions or federal constitutional law]; *Sturm, supra,* 9 Cal.App.3d at p. 186 [recognizing possibility of

protective order under § 1054.6 where advance disclosure to prosecution of penalty phase evidence may improperly interfere with defense at guilt phase].)

Another provision, section 1054.7, requires all disclosures to be made at least 30 days prior to "trial," but allows the parties to show "good cause . . . why a disclosure should be denied, restricted, *or deferred*." (Italics added.) That provision, however, is considerably narrower than section 1054.5, subdivision (b), for it limits "good cause" to "threats or possible danger to the safety of a victim or witness, possible loss or destruction of evidence, or possible compromise of other investigations by law enforcement." (§ 1054.7.)

Initially, it appears that the reference to "trial" in section 1054.7 cannot reasonably be construed as referring to the penalty phase of trial when penalty phase evidence is sought. In other words, we cannot simply hold that under section 1054.7, guilt phase discovery occurs before the guilt "trial" and penalty phase discovery occurs before the penalty "trial." As we previously explained in the course of determining that reciprocal discovery is available as to penalty phase evidence, a capital "trial" is a unitary proceeding that encompasses both the guilt and penalty phases. Indeed, this same reasoning induced us to hold that section 190.3 (requiring notice of aggravating evidence "prior to trial") obligates the prosecutor to give such notice prior to the commencement of the *guilt* phase. (See *People* v. *Robertson, supra,* 48 Cal.3d at pp. 45-46.)

Thus, to be consistent with these decisions, we hold that the reciprocal discovery provisions contemplate both guilt and penalty phase disclosure ordinarily would occur at least 30 days prior to commencement of the trial on *guilt* issues. Are the trial courts empowered to defer prosecution discovery, as the Court of Appeal herein assumed? The answer largely depends on whether the limitations on "good cause" under section 1054.7 restrict the courts' general power to order continuances of such disclosure under section 1054.5.

Section 1054.7 seems aimed at deferring disclosure of particular items of evidence (such as disclosure of information which might endanger a witness, or might be lost or destroyed) when specified good cause is shown, rather than at continuing a party's general discovery request if "necessary to enforce the provisions" of the reciprocal discovery statutes (§ 1054.5, subd. (b)), including protection of the defendant's constitutional rights (see § 1054.6; *Izazaga, supra,* 54 Cal.3d at pp. 382-383). Nothing in the text of section 1054.7 would necessarily override the courts' broad power under section 1054.5, subdivision (b), to order a general "continuance" of the prosecutor's discovery request. Likewise, nothing in section 1054.7 would or could constrict the court's authority to protect a defendant's constitutional rights.

Thus, given a showing that such a continuance is appropriate (based on such considerations as the probable duration of the guilt phase, the likelihood that a guilty verdict, with special circumstances, will be returned, and the potential adverse effect disclosure could have on the guilt phase defense), trial courts possess discretion to defer penalty phase discovery by the prosecution until the guilt phase has concluded. On request, the court may permit such showing to be made in camera. (See *Izazaga, supra,* 54 Cal.3d at p. 383; § 1054.5, subd. (b) [power to make "any other lawful order"]; § 1054.7, 2d par. ["any party" may request "good cause" showing to be made in camera].) If the trial court deems a particular item or items *constitutionally* protected from discovery until the guilt phase has concluded, the court should nonetheless order immediate disclosure of all unprotected items in accordance with the provisions of section 1054.3, as long as no other considerations suggest that deferral of discovery of the remaining evidence is appropriate.

Because we do not find the reciprocal discovery statutes (§ 1054 et seq.) necessarily inconsistent with section 190.3, we conclude that such discovery relating to the penalty phase of the trial is available to both parties. Accordingly the writ should issue, compelling the trial court to grant the People's motion for discovery unless it finds such discovery premature or constitutionally prohibited, as previously discussed.

The judgment of the Court of Appeal, issuing a peremptory writ of mandate, is affirmed. The writ should direct the trial court (1) to vacate its order denying penalty phase discovery to petitioner, and (2) to exercise its jurisdiction to compel appropriately timed reciprocal penalty phase discovery between the parties as authorized by section 1054 et seq.

Panelli, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

**MOSK, J.**—I dissent.

The reciprocal discovery scheme of Penal Code sections 1054 through 1054.7, including especially Penal Code section 1054.3, purportedly authorizing prosecutorial discovery, is on its face violative of a criminal defendant's privilege against self-incrimination under article I, section 15 of the California Constitution and, as such, is invalid. (*Izazaga* v. *Superior Court* (1991) 54 Cal.3d 356, 401 [285 Cal.Rptr. 231, 815 P.2d 304] (dis. opn. of Mosk, J.); see *In re Littlefield* (1993) 5 Cal.4th 122, 140-141 [19 Cal.Rptr.2d 248, 851 P.2d 42] (conc. & dis. opn. of Mosk, J.).)

Accordingly, I would reverse the judgment of the Court of Appeal directing the superior court to compel prosecutorial discovery.

The petition of real party in interest for a rehearing was denied December 30, 1993, and the opinion was modified to read as printed above.