**In re: The PEOPLE of the State of Colorado, Plaintiff–Respondent,**

v.

**Francisco MARTINEZ, Jr., Defendant–Petitioner.**

**No. 98SA489.**

Supreme Court of Colorado,
En Banc.

Dec. 14, 1998.

Rehearing Denied Dec. 28, 1998.

David J. Thomas, District Attorney, Fourth Judicial District, Hal Sargent, Deputy District Attorney, Mark Randall, Deputy District Attorney, Ingrid Bakke, Deputy District Attorney, Donna Skinner Reed, Chief Appellate Deputy, Mary Malatesta, Assistant Attorney General and Special Prosecutor, Denver, Colorado, Attorneys for Plaintiff–Respondent.

Holland, Kaplan & Pagliuca, David S. Kaplan, Denver, Colorado, Richilano & Ridley, Patrick L. Ridley, Denver, Colorado, Dean S. Neuwirth, Denver, Colorado, Attorneys for Defendant–Petitioner.

Steve L. Bernard, Assistant District Attorney, Brighton, Colorado For Amicus Curiae Colorado District Attorney's Council.

H. Patrick Furman, Boulder, Colorado For Amicus Curiae Colorado Criminal Defense Bar.

Justice KOURLIS delivered the Opinion of the Court.

This matter comes before the court pursuant to C.A.R. 21. On September 29, 1998, the court issued a rule to show cause interceding in and staying the capital murder case pending against Francisco Martinez, Jr., for the limited purpose of addressing the defendant/petitioner's [1] constitutional challenge to one provision of the statutory reciprocal discovery requirements applicable to the penalty phase of this case. The matter was at issue before the court on November 12, 1998. We now conclude that the provision of the statute at issue is facially constitutional; hence, we discharge our rule to show cause.

I.

On September 3, 1998, a jury convicted Francisco Martinez, Jr. of first-degree murder. On September 10, 1998, the trial court set the capital sentencing hearing to begin on

---

**1.** This case is proceeding under the caption of *In Re: People v. Martinez,* contrary to our prior procedure because the court amended C.A.R. 21 effective January 1999 to permit captions to reflect the real parties to the case. We are applying that procedure here.

November 10, 1998. The hearing was stayed by this court's order.

The case is proceeding under the dictates of new legislation codified at section 16–11–103, 6 C.R.S. (1998), concerning the exchange of information between the defendant and the prosecution prior to the penalty phase of a death penalty case. Specifically, on April 21, 1998, certain amendments to sections 16–11–103 became law. *See* ch. 137, sec. 1, § 16–11–103(3.5), 1998 Colo. Sess. Laws 379, 380. In pertinent part, section 16–11–103(3.5)(c) requires that:

> The defendant shall provide the prosecuting attorney with the following information and materials no later than 20 days after the verdict is returned finding the defendant guilty of a class one felony:
>
> (I) a list of all witnesses whom the defendant may call at the sentencing hearing, specifying for each the witness' name, address, and date of birth and the subject matter of the witness' testimony;
>
> (II) the written and recorded statements, including any notes of those statements, of each witness whom the defendant may call at the sentencing hearing;
>
> (III) any reports, recorded statements, and notes of any expert whom the defendant may call as a witness during the sentencing hearing, including results of physical or mental examinations and scientific tests, experiments, or comparisons; and
>
> (IV) a list of books, papers, documents, photographs, or tangible objects that the defendant may introduce at the sentencing hearing.

On September 23, 1998, twenty days after entry of the guilty verdict, the defense filed its (3.5)(c) disclosures under seal pending resolution of certain motions yet to be filed. On September 25, 1998, the defense filed a motion to declare section 16–11–103(3.5)(c) unconstitutional, asserting that application of the statute would violate the defendant's right against self-incrimination,[2] his right to effective assistance of counsel,[3] and his rights to due process and equal protection under the law.[4]

The trial court held a hearing on the motion on September 28, 1998, denied the motion, and ordered the defense to provide to the prosecution by September 30 any written and recorded statements of witnesses whom the defendant intended to call at the sentencing hearing. The trial court concluded:

> [T]he way I read it, I believe it means that if you were taking — whoever is taking the statement, made notes of what was being said, that those would be includable, but not notes of the attorneys of their impressions of what's being said. And I won't require you to give anything which you've made notes on that are your impressions of what the witness says or your impressions of how it can be used at the time of the hearing in this matter.

The defendant does not here dispute his obligation to provide the names and addresses of witnesses whom he intends to call during the sentencing hearing. What he does dispute is the need to disclose the written and recorded statements of the witnesses, including notes of those statements, that he has compiled in the course of his own investigations.

Defendant argues that the reciprocal discovery provisions of subsection (3.5)(c) will curtail defense counsel's ability to gather and put on a mitigation case by forcing the defense to reveal to the prosecution all of their investigative work product. Defendant further argues that such discovery would stifle the willingness of potential witnesses to cooperate with the defense because they will perceive that their statements may be revealed to the prosecution and become a matter of public record. Finally, defendant contends that subsection (3.5)(c) undermines the adversarial system by forcing defense counsel to turn over the fruits of its investigation,

---

2. *See* U.S. Const. amend. V; Colo. Const. art. II, § 18.

3. *See* U.S. Const. amend. VI; Colo. Const. art. II, § 16.

4. *See* U.S. Const. amend. XIV; Colo. Const. art. II, § 25.

"effectively making the defense lawyer a prosecutor."

## II.

Our criminal justice system is based upon the profound principle that a defendant is entitled to the presumption of innocence, and that the prosecution must offer proof of guilt beyond a reasonable doubt in order to secure a conviction. The defendant need not testify, and need offer no evidence. Within that context and consistent with the prosecutorial burden, cases and statutes around the country have long held that the prosecution must provide the defense with far-ranging access to information about the case compiled by the prosecution. *See, e.g., Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *In re Amendment to Fla. Rule of Criminal Procedure 3.220 (Discovery)*, 550 So.2d 1097 (Fla.1989); *State v. Knight*, 734 P.2d 913 (Utah 1987); *State v. Blackwell*, 120 Wash.2d 822, 845 P.2d 1017 (Wash.1993).

Only within the last four decades of our history has the concept of the defendant's duties of disclosure to the prosecution arisen. Such reciprocal discovery obligations have largely met with favor in the courts. For example, in *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), the United States Supreme Court upheld a statute requiring a defendant to provide advance notice of an alibi defense by reminding us that "[t]he adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played." *Id.* at 82, 90 S.Ct. 1893. Similarly, in *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), the Court concluded that reciprocal discovery "by increasing the evidence available to both parties, enhances the fairness of the adversary system." *Id.* at 473–74, 93 S.Ct. 2208.

As to the defendant, the courts have reasoned that reciprocal discovery requirements merely accelerate the timing of disclosures that would otherwise be made by the defendant at trial. *See Williams*, 399 U.S. at 85, 90 S.Ct. 1893. In short, the broad question of whether it is constitutional to impose upon the defendant in a criminal proceeding certain disclosure obligations has been answered, and answered affirmatively. *See United States v. Nobles*, 422 U.S. 225, 233, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (holding that the court can compel the defendant to disclose his investigator's report under certain circumstances when it would substantially enhance the search for the truth); *Williams*, 399 U.S. at 84–85, 90 S.Ct. 1893 (holding that a state may require defendants to provide the prosecution with advance notice of an alibi defense without violating the Fifth Amendment privilege against self-incrimination or the Fourteenth Amendment due process protections). In the context of an attack on the constitutionality of Crim. P. 16, our court addressed and upheld reciprocal discovery requirements in 1975. *See People v. District Court*, 187 Colo. 333, 531 P.2d 626 (1975). We observed that the Rule survived constitutionality scrutiny because it only accelerated the disclosure by the defendant of that which he would otherwise disclose at trial. Therefore, both the United States Supreme Court and this court have previously concluded that reciprocal discovery carries no inherent flaw.

## III.

Consequently, we proceed to the limited question before us: namely, whether the statutory reciprocal discovery required of the defendant in section 16–11–103(3.5)(c) is facially unconstitutional under the state or federal constitutions.[5]

We presume that statutes are constitutional, and we interpret them according-

---

5. We note that applicable state and federal constitutional provisions share the same analytical framework. *See People v. Rodriguez*, 914 P.2d 230, 294–95 (Colo.1996) (analyzing the denial of effective assistance of counsel under the state and federal constitutions using federal caselaw); *Scholz v. Metropolitan Pathologists, P.C.*, 851 P.2d 901, 912 n. 7 (Colo.1993) (noting that the "analytic framework used to evaluate the right to equal protection ... is the same under both the Colorado and federal constitutions"); *People v. District Court*, 187 Colo. at 338–43, 531 P.2d at 629–31 (analyzing a defendant's right against self-incrimination under the state and federal constitutions using federal caselaw).

ly. *See, e.g, People v. Thomas,* 867 P.2d 880, 883 (Colo.1994); *Perry Park Water & Sanitation Dist. v. Cordillera Corp.*, 818 P.2d 728, 732 (Colo.1991). Indeed, the party challenging the constitutionality of a statute has the burden of proving unconstitutionality beyond a reasonable doubt. *People v. Janousek,* 871 P.2d 1189, 1195 (Colo.1994). When we read subsection (3.5)(c) from that perspective, we find that the constitutional issues raised by the defendant are without merit and have been resolved largely by our decision in *People v. Small,* 631 P.2d 148 (Colo.1981).

Before discussing these claims, however, we clarify two matters of statutory interpretation as a predicate to reaching conclusions regarding constitutional issues. We determine that: (1) the statute extends only to those witnesses whom the defendant intends to call at trial and not to all prospective witnesses,[6] and extends only to statements that relate to the subject matter of the testimony of the witness; and (2) that the reciprocal discovery required of the defendant by subsection (3.5)(c) comprises only substantial recitations of witness statements, and not the mental impressions, conclusions, opinions, or legal theories of the defense.[7]

### A.

In reaching the first of these interpretations, we heed a recent decision of the Nevada Supreme Court that held unconstitutional Nevada's reciprocal discovery statute because it applied to all prospective witnesses, some of whom the defendant would never seek to introduce at trial.[8] Because of the statute's broad scope, that court feared that the defendant would be "forced to disclose information that he never intended to disclose at trial, some of which could be incriminating." *Binegar v. District Court,* 112 Nev. 544, 915 P.2d 889, 894 (Nev.1996). Such a result would violate the defendant's Fifth Amendment right against self-incrimination.[9]

■ We view the Colorado discovery statute as pertaining only to the witnesses whom the defendant intends to call at the sentencing hearing. That is, the defendant retains a choice in identifying the individuals to whom the disclosure applies, and may limit potentially harmful disclosure by only calling witnesses likely to help his case. He is not forced to provide the prosecution with incriminating evidence from witnesses whom he would never call at trial.

■ Additionally, we limit the mandated disclosures to statements that relate to the subject matter of the testimony of the witness, including any conflicting or differing versions of the proposed testimony. In the context of reciprocal discovery, the United States Supreme Court has held that a state constitutionally may "accelerate the timing of disclosure," forcing a defendant to "divulge at an earlier date information that [he or she] from the beginning planned to divulge at trial." *Williams,* 399 U.S. at 85, 90 S.Ct. 1893. The point of reciprocal discovery is to try to assure the fairness and efficiency of the trial, or in this instance, sentencing hearing.

We draw support for the limitation of statements to those within the subject matter of the testimony from *Hutchinson v. People,*

---

6. The statute specifies application to "all witnesses whom the defendant may call at the sentencing hearing." We read "may" to mean "intends to call."

7. We find that the latter issue of statutory interpretation derives naturally from the express wording of subsection (3.5)(c), which requires disclosure only of the "written and recorded *statements,* including any notes of those *statements,* of each witness whom the defendant may call." § 16–11–103(3.5)(c) (emphasis added). As we discuss below, the definition of the word "statements" under Colorado discovery law has not traditionally included any impressions, opinions, or observations of the attorney or the attorney's staff, and we apply that distinction here.

8. The statute in question required disclosure of "[w]ritten or recorded statements made by *any* witness, or copies thereof, within the possession, custody or control of the defendant, the existence of which is known, or by the exercise of due diligence may become known, to the defendant." Nev.Rev.Stat. § 174.235(2) (1995) (emphasis added).

9. *See* U.S. Const. amend. V ("No person shall be ... compelled, in any criminal case, to be a witness against himself...."); *Binegar,* 915 P.2d at 893.

742 P.2d 875 (Colo.1987), in which we declined to permit the prosecution to use the defense expert in its case-in-chief. In that case, we observed:

> [A] fundamental tenet underlying our adversarial system and inherent in a defendant's guarantees of counsel, due process and the privilege against self-incrimination [is] that the defendant has the right to require the prosecution to investigate its own case, find its own evidence and prove its own facts.... To safeguard the defense attorney's ability to provide the effective assistance guaranteed by these constitutional provisions, it is essential that he be permitted full investigative latitude in developing a meritorious defense on his client's behalf. This latitude will be circumscribed if defense counsel must risk a potentially crippling revelation to the State of information discovered in the course of investigation which he chooses not to use at trial.

*Hutchinson*, 742 P.2d at 882–883 (citations omitted).

Accordingly, the defendant must produce to the prosecution *before* the trial or hearing the information that would ultimately become known to the prosecution at that trial or proceeding. Reciprocal discovery may not include statements of witnesses outside the subject matter of their testimony at trial, because such extraneous information would not otherwise become known to the prosecution during the defense witness's trial testimony.[10]

## B.

The next issue of statutory interpretation goes to the heart of the defendant's concerns about the statute and the trial court's interpretation of the statute: the work product privilege. Traditionally, this privilege has protected the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party as embodied in specific documents or tangible items prepared in actual anticipation of litigation or for trial. *See A. v. District Court*, 191 Colo. 10, 23, 550 P.2d 315, 325 (1976).

Citing *Small* and *United States v. Nobles*, 422 U.S. 225, 236–40, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), the defendant argues that because the discovery requirements of subsection (3.5)(c) extend to witness statements prepared or collated by a criminal defense investigator[11] or attorney in anticipation of trial, the new statute violates the work product privilege. We disagree.

We note at the outset that the work product doctrine derives from judicial interpretation.[12] It is a doctrine that has evolved

---

10. *See American Bar Association Standard for Criminal Justice Discovery and Trial by Jury*, Standard 11–2.2(a)(i), cmt. at 39 (3d ed.1996) (noting that "[w]hen limited to defendant's trial evidence, a pretrial disclosure rule is constitutional under the Fifth Amendment").

11. The defendant correctly points out that the work product doctrine includes the work of investigators and other agents of counsel. As the Supreme Court stated in *Nobles*, "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." *Nobles*, 422 U.S. at 238–39, 95 S.Ct. 2160. Indeed, in *Small*, we implicitly recognized the application of the work product doctrine to a report prepared by a defense investigator. *See Small*, 631 P.2d at 158–59.

12. The work product doctrine was recognized by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). In that case, the Supreme Court recognized that

> it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.... Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten.... Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Id.* at 510–11, 67 S.Ct. 385; *see also People v. Shaw*, 646 P.2d 375 (Colo.1982) (holding that destruction of the original notes containing substantial recitations of the witnesses statements

through statute, rule, and case law. It is designed to protect an attorney's mental processes reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ... materials." *Hickman*, 329 U.S. at 511, 67 S.Ct. 385; *see also Watson v. Regional Transp. Dist.*, 762 P.2d 133, 142 (Colo.1988); *People v. Small*, 631 P.2d 148, 159 (Colo.1981). Cases dealing with the work product doctrine recognize that materials compiled in advance of litigation fall along a continuum. Certain materials, such as an attorney's legal memoranda, are deemed to be pure work product and are absolutely immune from discovery to the same extent as an attorney-client communication. Other materials enjoy only qualified immunity. *Watson v. RTD*, 762 P.2d at 142. Some courts have divided the continuum into opinion work product, which is entitled to an absolute privilege, and non-opinion work product, which only merits a qualified privilege. *Martin Marietta Corp. v. Pollard*, 856 F.2d 619, 625 (4th Cir.1988).

In Colorado, we have alternately held that witness statements are not work product, or if work product, are entitled only to a qualified privilege that can be overcome or waived. Certainly, witness statements are not the product of the mental process of the interviewer. Rather, they are the words of the interviewee. They are facts, potentially important to the struggle for truth in the adversary process. They are work product only in the sense that they are compiled by the attorney; not in the sense that they contain the attorney's mental impressions or strategies. *See State v. Hardy*, 235 S.E.2d 828, 841 (N.C.1977).

The distinction between witness statements and pure work product finds ample support both in Colorado law and in national treatises. Rule 16 of the Colorado Rules of Criminal Procedure requires the prosecutor to disclose to the defendant in all criminal cases "statements of all witnesses" within the prosecutor's "possession or control." Crim. P. 16(a)(1)(I). However, no disclosure is required for those materials that contain "the opinions, theories, or conclusions of the pros-

ecuting attorney or members of his legal staff." Crim. P. 16(e)(1).

This rule distinguished between disclosure of witness statements and disclosure of pure work product even before it carved out a specific statutory section addressing work product. Prior versions of Rule 16 required disclosure of witness statements, but confined the definition of such statements to "stenographic or written statements or notes which are in substance recitals of an oral statement made by such witness and which were reduced to writing contemporaneously with the making of such oral statement." *See* Crim. P. 16(b) & (d)(3), 1 C.R.S. (1963).

In interpreting those provisions requiring disclosure of witness statements, we determined that witness statements included not only those statements written or signed by the witnesses, but also notes of those statements within the possession or control of the prosecution. *See Ortega v. People*, 162 Colo. 358, 362, 426 P.2d 180, 182 (1967). We held that "all that is required by the language of Crim. P. 16(d)(3) is that the notes be substantially verbatim recitals of the oral statement." *Ortega*, 162 Colo. at 363, 426 P.2d at 182; *Goodwin v. District Court*, 197 Colo. 6, 9, 588 P.2d 874, 877 (1979) (holding that written notes, if they are in substance recitals of the oral statements of a witness, must be produced by the prosecution under Rule 16).

In *People v. Thatcher*, 638 P.2d 760 (Colo. 1982), the trial court declined to require the prosecution to produce written notes made by prosecution investigators after interviewing certain rebuttal witnesses. The prosecution defended the trial court's decision by arguing that the work product exception protected anything intended to guide the prosecutor in his examination of witnesses. We concluded that the information should have been disclosed because the notes were "in essence recorded oral statements of witnesses. The notes include a few statements which are nondiscoverable comments or interpretation ... but the majority of the notes are in substance a record of oral statements made by the witnesses and thus not protect-

was a discovery violation, although not one of constitutional materiality).

ed by the work product exception." *Thatcher*, 638 P.2d at 767.

In *People v. Small*, we concluded that the defense investigator's report, containing prior statements of the witness was privileged, but that the defense waived any privilege by using statements contained in the report to impeach a prosecution witness. We noted that:

> The defense counsel read selected portions of the investigator's report in the presence of the jury, using the exact language of the report.... By electing to present impeachment evidence in this manner, the defense waived the work product privilege with respect to matters covered in the investigator's report.

631 P.2d at 159 (citation omitted).

Hence, our precedent instructs us that witness statements are not work product at all, or are work product but with only qualified immunity from discovery. In either event, statutorily compelled production of statements is permissible. This holding is consistent with the premise of defense-produced discovery: namely, that the defendant is merely disclosing at an earlier time that which would otherwise come out in court. By calling a witness, the defense waives any work product privilege associated with the subject matter of the witness' testimony. We now hold that by stating an intent to call a witness, the defendant triggers his waiver of work product privilege at an earlier point in time.

In sum, we find no abrogation of the work product doctrine inherent in subsection (3.5)(c)'s mandated disclosure of witness statements. The statements are attorney work product only in the broadest sense, and in any event, the defense is deemed to waive work product protection for witness statements by endorsing the witness.

## IV.

■ Within the framework of our statutory interpretation, the defendant's constitutional challenges fall short. Indeed, our opinion in *Small* addresses most of the constitutional questions raised by the defendant. In *Small*, defense counsel impeached a prosecution witness with statements that the witness had given to a defense investigator. The statements were embodied in the investigator's interview report. To enable the prosecution to attempt to rehabilitate their witness, the trial court ordered defense counsel to provide a copy of the full report to the prosecution. The court ruled that the defendant's use of the statements for cross-examination constituted a waiver of relevant evidentiary privileges. The defendant contested that ruling on appeal and we upheld the trial court's ruling.

■ We held that the defendant's Fifth Amendment privilege against compulsory self-incrimination was not contravened by production of the report because that privilege is personal in nature and "the defendant was in no way compelled to be a witness against himself, nor were communications extorted from him." *Small*, 631 P.2d at 158. We similarly rejected the defendant's assertion of a violation of the Sixth Amendment right to effective assistance of counsel, turning to *Nobles*, 422 U.S. at 241, 95 S.Ct. 2160, for the proposition that "[t]he Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth." *Small*, 631 P.2d at 158 (internal quotation marks omitted). Lastly, we rejected the defendant's due process argument, holding that "[t]rial by ambush ... does not promote accuracy or efficiency in the search for truth. Criminal discovery is not a one-way street flowing in the direction of the defense." *Small*, 631 P.2d at 158.

Our reasoning in *Small* applies with equal force to the claims raised by the defendant here. We therefore reject the claims Martinez raised under the Fifth Amendment, the Sixth Amendment, and the Due Process Clause of the Fourteenth Amendment.

■ The only remaining constitutional challenge is whether subsection (3.5)(c)'s reciprocal discovery provision runs afoul of equal protection by applying only to the defendants in capital sentencing hearings and not to other defendants. "Equal protection

of the laws guarantees that *similarly situated* persons will receive like treatment." *People v. Mozee*, 723 P.2d 117, 126 (Colo.1986) (emphasis added). If a legislative scheme is not based on a suspect class or gender-based classification and if it does not infringe upon a fundamental right, it will be upheld under equal protection review so long as its "classification is reasonable and bears a rational relationship to legitimate State objectives." *J.T. v. O'Rourke*, 651 P.2d 407, 413 (Colo. 1982).

In *People v. Wiedemer*, 852 P.2d 424, 439 (Colo.1993), the defendant argued that the Colorado statutes impermissibly differentiated between persons convicted of class I felonies and habitual offenders for purposes of post-conviction challenges. We held that for purposes of post-conviction review, persons convicted of class I felonies are not similarly situated with those convicted of lesser crimes "by virtue of the seriousness of the penalties to which these groups are subject." *See Wiedemer*, 852 P.2d at 439. This holding clearly supports a conclusion that the legislature may rationally distinguish between persons charged with class I capital felonies and persons charged with lesser crimes for discovery purposes.

On this issue, we are aligned with the California courts in their review of a capital discovery provision similar to our statute, embodied in their Proposition 115.[13] In *Sturm*, 11 Cal.Rptr.2d at 652, the California Court of Appeal noted that "by definition, a defendant in a non-capital case is not similarly situated to his capital case counterpart for the obvious reason that the former's life is not on the line." *Id.* at 660.

We agree that reciprocal discovery provisions do not deny a capital defendant equal protection of the laws because no other defendants are similarly situated to capital defendants. Quite simply, a capital sentencing hearing is qualitatively different from any other kind of sentencing proceeding: only in a capital case is the death penalty an issue. A host of different provisions apply to capital sentencing proceedings, a number of them favoring the defendant. Hence, we find the General Assembly's classification here to be reasonable. Subsection (3.5) also bears a rational relationship to the government's interest in ensuring an accurate and just verdict in the unique setting of the penalty phase to a capital murder case. Applying different discovery requirements to a capital defendant does not create a disequilibrium for purposes of the equal protection of the law. *See People v. Superior Court (Mitchell)*, 5 Cal.4th 1229, 23 Cal.Rptr.2d 403, 859 P.2d 102, 106 (Cal.1993); *Sturm*, 11 Cal. Rptr.2d at 652.

## V.

We are left with the very practical question of how the materials are to be redacted, such that they may be supplied to the prosecution. We anticipate that this function will normally be achieved by defense counsel, prior to disclosure. However, consistent with our directives in other contexts, we conclude that the trial judge may conduct an in camera review in order to excise the privileged portion of the material. In situations in which the notes of an attorney or the attorney's agent contain both opinion work product and discoverable witness statements, or situations in which some statements are discoverable and others are not, the trial court retains discretion and can conduct an in camera review in order to excise portions of the material. *See Martinelli v. District Court*, 199 Colo. 163, 169–71, 612 P.2d 1083, 1088–89 (1980) (discussing in camera review in the context of materials alleged to be protected by the official information privilege). We recognize that the trial judge is one of the three judges charged with making an ultimate decision in this case. However, judges routinely review information that they determine may not be taken into account for decision-making purposes. *See, e.g., Deeds v. People*, 747 P.2d 1266, 1271–72 (Colo.1987); *People v. Dailey*, 639 P.2d 1068, 1076–77 (Colo.1982). We trust their ability to exclude

**13.** Proposition 115 was a citizen ballot initiative passed by the citizens of California in June 1990. The initiative included a new constitutional provision for reciprocal discovery in criminal cases. *See* Cal. Const. art. I, § 30; *People v. Superior Court (Sturm)*, 9 Cal.App.4th 172, 11 Cal.Rptr.2d 652, 654 (Cal.App.1992).

non-discoverable information from consideration for all purposes. Other states have also concluded that in camera hearings afford the most appropriate means of redacting privileged information in the reciprocal discovery context. *See, e.g., Davidson,* 880 P.2d at 1336.

### VI.

Thus, application of our precedent leads us to reject the defendant's facial challenges to the constitutionality of section 16–11–103(3.5) under the federal and Colorado constitutions. In addition, we hold that as a matter of statutory interpretation, section 16–11–103(3.5) extends only to witnesses the defendant intends to call at trial. Moreover, we conclude that since the statute only requires the defendant to disclose endorsed witnesses' statements, it does not impermissibly interfere with attorney work product protections.

We discharge our rule to show cause, vacate the stay, affirm the trial court's orders, and return this case to the trial court for further proceedings consistent with this opinion.

Justice BENDER does not participate.