2012 CO 34

**In re the PEOPLE of the State of Colorado, Plaintiff**

v.

**Brittney Breann ANGEL, Defendant.**

**No. 12SA24.**

Supreme Court of Colorado,
En Banc.

May 14, 2012.

Daniel H. May, District Attorney, Fourth Judicial District, Andrew S. Vaughan, Deputy District Attorney, Colorado Springs, Colorado, Attorneys for Plaintiff.

Douglas K. Wilson, Public Defender, Cynthia J. Jones, Deputy Public Defender, Colorado Springs, Colorado, Attorneys for Defendant.

Chief Justice BENDER delivered the Opinion of the Court.

¶1 We accepted jurisdiction over this C.A.R. 21 original proceeding in order to determine the scope of the work product doctrine, under Crim. P. 16(I)(e)(1), as a protection against a prosecutor's general obligation to disclose information and materials to the defense.

¶2 In its order below, the trial court ruled that the prosecutorial work product doctrine under Crim. P. 16(I)(e)(1) is limited to work product prepared in anticipation of the case before the court and does not extend to work product prepared in anticipation of a different but related criminal prosecution. Thus, the trial court ruled that work product prepared in anticipation of a separate prosecution fell outside Crim. P. 16(I)(e)(1)'s protection of "legal research or of records, correspondence, reports, or memoranda to the extent that they contain the opinions, theories, or conclusions of the prosecuting attorney or members of his legal staff," and ordered disclosure of materials that the prosecution had prepared in anticipation of a different but related criminal investigation. Prior to disclosing the contested materials, the People petitioned this court under C.A.R. 21 to reverse the trial court because, the People argue, the prosecutorial work product protection under Crim. P. 16(I)(e)(1) extends to all work product and is not limited to materials pre-

pared in anticipation of prosecuting the case immediately before the court.

¶ 3 Resolving this issue in accordance with the intent of Crim. P. 16(I)(e)(1) to protect the professional judgment and mental impressions of prosecutors from disclosure so that they may candidly analyze the merits of a case and plan their litigation strategy, we reverse the trial court's order and make the rule absolute. We hold that the protection of prosecutorial work product, under Crim. P. 16(I)(e)(1), extends to opinion work product prepared by the prosecution in anticipation of any criminal prosecution.[1] Because the trial court did not inspect the contested materials nor decide whether they constitute opinion work product prepared in anticipation of a criminal prosecution, we remand this matter to the trial court to make this determination through an ex parte, in camera review. Crim. P. 16(I)(e)(1), (III)(f).

## I. Facts and Procedural History[2]

¶ 4 Defendant Brittney Angel is awaiting trial on charges of vehicle eluding, evidence tampering, concealing death, third-degree assault, and reckless driving. All of these charges stem from a single incident that occurred in Colorado Springs on September 13, 2011.

¶ 5 On that date, three sheriff's deputies were attempting to serve an arrest warrant on a suspect that they believed to be living in a motel. Although no one answered the motel room door, one of the deputies noticed that the suspect they were looking for appeared to be sitting in a vehicle in the motel parking lot. The vehicle also contained three other individuals: Angel in the passenger's seat, Christen Vargas in the driver's seat, and a third passenger in the back of the car with the suspect that the deputies were seeking to serve with the warrant. The three sheriff's deputies approached and surrounded

the vehicle in an attempt to arrest the suspect.

¶ 6 As one of the deputies, Deputy Miller, approached the driver's side door, however, Vargas shifted the vehicle into gear and allegedly ran over Deputy Miller's foot.[3] Deputy Miller immediately drew his firearm and shot Vargas before the vehicle sped off. Shortly thereafter, Vargas died, and the People allege that Angel moved Vargas' body out of the driver's seat and proceeded to operate the vehicle recklessly in order to further elude the police. Three hours after the shooting, Vargas' body was discovered in the vehicle outside of a nearby emergency room. A warrant was issued for Angel's arrest in connection with the events of the shooting, and she eventually turned herself in to the police.

¶ 7 Although the People investigated Deputy Miller's actions in fatally shooting Vargas, the district attorney's office apparently concluded that Deputy Miller engaged in reasonable self-defense and declined to charge him in connection with the shooting.

¶ 8 To prepare her defense against the present charges, Angel requested that the People disclose "the District Attorney's investigation into the shooting and [its] findings," including the office's investigation into the potentially wrongful conduct of Deputy Miller. The People agreed in part and disclosed its investigation file to Angel with the exception of two items: (1) the People refused to disclose an internal PowerPoint presentation that a deputy district attorney prepared to aid the elected district attorney in making a charging decision with respect to Deputy Miller; and (2) the handwritten notes that a deputy district attorney took during a witness interview while investigating Deputy Miller's potential criminal culpability. The People claimed that these materials were protected from disclosure as work product,

---

1. This protection, however, is not without limitation. *See infra* n. 7.

2. Because this matter has not yet proceeded to trial, our recitation of the facts of the underlying alleged criminal incident are solely for the purposes of this original proceeding. Thus, this summary of the facts is not a binding factual determination for the purposes of appellate re-

view. *See People v. Ray*, 252 P.3d 1042, 1045 n. 3 (Colo.2011).

3. There is a factual dispute as to whether Deputy Miller drew his gun in response to suspicious movement by Angel before Vargas ran over his foot. For the purposes of our present review, it is irrelevant whether Deputy Miller drew his gun before or after Vargas ran over his foot.

pursuant to Crim. P. 16(I)(e)(1). Angel moved for the trial court to compel the disclosure of these materials.

¶ 9 After a hearing on this issue, the trial court ordered the People to disclose the requested materials. In its ruling, the trial court reasoned that Crim. P. 16(I)(e)(1) did not excuse the People's refusal to disclose work product that was prepared in connection with its investigation into the conduct of Deputy Miller because the protection for prosecutorial work product only applies to work product prepared in connection with the case immediately before the trial court—in this instance, the prosecution of Angel. Because the court reasoned that the contested materials did not fall under the protection for attorney work product, it ordered the People to release them without undertaking an ex parte, in camera review of the materials or making a finding of fact as to whether they did constitute work product with respect to the People's investigation of Deputy Miller.

¶ 10 The People petitioned this court pursuant to C.A.R. 21 to review the trial court's discovery order. We granted the petition and now make the rule absolute.

## II. Original Jurisdiction pursuant to C.A.R. 21

■ ¶ 11 We first address whether an original proceeding is the proper method to review this trial court order. Relief under C.A.R. 21 is extraordinary in nature and is solely within the discretion of this court. "This court may exercise original jurisdiction under C.A.R. 21 where a trial court proceeds without or in excess of its jurisdiction or to review a serious abuse of trial court discretion, and where an appeal would not be an adequate remedy." *Ray*, 252 P.3d at 1047.

■ ¶ 12 Here, there is no other adequate remedy because, at this point in the trial, the People cannot seek an interlocutory appeal under C.A.R. 4.1(a), nor is there a final judgment that can be appealed pursuant to C.A.R. 1(a)(1). Appellate review after the conclusion of the underlying criminal trial would provide an inadequate remedy because, by then, the contested documents would already have been disclosed and any work product protection would be destroyed. Under these circumstances, we conclude that original jurisdiction is appropriate and proceed to interpret the prosecutorial work product exception contained in Crim. P. 16(I)(e)(1).

## III. Standard of Review

■ ¶ 13 Under the Colorado Constitution, this court retains plenary authority to promulgate and interpret the Colorado Rules of Criminal Procedure. Colo. Const. art. VI, § 21. Thus, although discovery orders are committed to the broad discretion of the trial court, the interpretation of a rule in making a discovery order is a question of law, which we review de novo. *See Peterson v. People*, 113 P.3d 706, 708 (Colo.2005).

## IV. The Prosecutorial Work Product Doctrine

¶ 14 This case presents the question of whether Crim. P. 16(I)(e)(1) protects only the prosecution's work product in connection with the criminal proceeding before the court or if the exception extends to all other prosecutorial work product prepared in anticipation of other criminal prosecutions.

¶ 15 Crim. P. 16(I)(a), 16(I)(b), and 16(I)(c) explicitly set forth a litany of materials that the prosecution must disclose to the defense, including all materials in its possession related to its investigation of the accused in the case at hand, all exculpatory evidence, and, upon the defense's request, all related material that is held by another government agency that can be recovered by the prosecution through diligent good faith efforts. Additionally, Crim. P. 16(I)(d) states that a trial court may, in its discretion, compel the prosecution to disclose other materials that are not explicitly enumerated in Crim. P. 16, provided that the trial court finds that the other materials are relevant to the defendant's case and that the defense's request is reasonable.

¶ 16 This broad prosecutorial obligation to disclose materials to the defense, however, is not without limit. One such limitation—relevant here—is Crim. P. 16(I)(e)(1), which provides that the People are excused from

disclosing materials that contain its legal strategies or opinions created in anticipation of a criminal prosecution:

> Disclosure shall not be required of legal research or of records, correspondence, reports, or memoranda to the extent that they contain the opinions, theories, or conclusions of the prosecuting attorney or members of his legal staff.

*See People v. Dist. Court,* 790 P.2d 332, 335–36 (Colo.1990) (reasoning that the prosecutorial work product protection found in Crim. P. 16(I)(e)(1) mirrors the common law rule and thus applies to opinion work product created in anticipation of litigation).

■■■■ ¶ 17 In construing the Colorado Rules of Criminal Procedure, "we employ the same interpretive rules applicable to statutory construction." *People v. Fuqua,* 764 P.2d 56, 58 (Colo.1988). We first read the language of a rule consistent with its plain and ordinary meaning, and, if it is unambiguous, we apply the rule as written. *Id.* at 59. If, however, the rule is unclear on its face, then we must attempt to resolve any ambiguity so as to make our application of the rule consistent with the intent of the rule and the fundamental purposes of the Colorado Rules of Criminal Procedure "to provide for the just determination of criminal proceedings" and "to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay." *Peterson,* 113 P.3d at 708 (quoting Crim. P. 2 ("Purpose and Construction")).

¶ 18 Our jurisprudence distinguishes between "factual" and "opinion" work product. *Gall ex rel. Gall v. Jamison,* 44 P.3d 233, 238–39 (Colo.2002); *see also* Barbara E. Bergman & Nancy Hollander, 3 Wharton's Criminal Evidence § 11:29 (15th ed. 2011). Generally, "[o]pinion work product includes the attorney's mental impressions, opinions or legal theories" and is afforded a high level of protection. Bergman & Hollander, *supra,* § 11:29. In contrast, factual work product encompasses the factual observations memorialized by an attorney while conducting an investigation and generally receives a lower level of protection. Bergman & Hollander, *supra,* § 11:29.

■■■■ ¶ 19 Under the plain meaning of Crim. P. 16(I)(e)(1), the prosecutorial work product protection only applies to so-called "opinion work product," and does not extend to "fact work product." The commentary to ABA Criminal Justice Discovery Standard 11–6.1(a), which contains language that is nearly identical to Crim. P. 16(I)(e)(1),[4] explains that the prosecutorial work product doctrine protects attorney work product that is "judgmental rather than factual." ABA Criminal Justice Discovery Standard 11–6.1(a), Commentary (3d ed. 1995) [hereinafter "ABA Standard 11–6.1(a)"]. By way of example, the commentary provides a list of materials that are typically considered opinion work product, including "notes relating to trial strategy, to theoretical arguments and supporting authority, and to direct and cross-examination; office memoranda on legal questions, evidence, prospective jurors, and other aspects of the case ...; and summaries and analyses of the case file, of anticipated witnesses or their testimony, and of the probability of obtaining certain evidence." *Id.* Accordingly, Crim. P. 16(I)(e)(1) protects against the disclosure of any prosecutorial work product containing the prosecution's strategy, legal research, impressions, or professional judgments. Conversely, the rule does not protect against the disclosure of relevant factual work product, which the trial court may, in its discretion after a showing by the defense that the materials sought are relevant and that the request is reasonable, order the prosecution to disclose under Crim. P. 16(I)(d)(1).[5]

4. Adopted in 1985, Crim. P. 16(I)(e)(1) was patterned after an earlier, nearly identical version of ABA Standard 11–6.1(a), which provided that "[d]isclosure shall not be required of legal research or of records, correspondence, reports, or memoranda to the extent that they contain the opinions, theories, or conclusions of the prosecuting attorney or members of the prosecutor's legal staff." ABA Criminal Justice Discovery and Procedure before Trial Standard 11–2.6(a) (2d ed. 1980).

5. We note that a prosecutor's work product may contain both "factual" and "opinion" work product. In such instances, the trial court should engage in an ex parte, in camera review to determine whether the opinion work product can be completely excised before disclosure of discover-

¶ 20 In contrast, the plain meaning of Crim. P. 16(I)(e)(1) does not resolve the present controversy regarding the so-called "temporal scope" [6] of the protection because the rule does not specify whether it covers all prosecutorial opinion work product or merely the opinion work product prepared in anticipation of prosecuting the case before the court. Unlike the federal prosecutorial work product protection contained in Federal Rule of Criminal Procedure 16, which provides for the protection of "reports, memoranda, or other internal government documents made by an attorney for the government ... in connection with investigating or prosecuting *the case*," on its face, Colorado's rule does not define the "temporal scope" of our state's prosecutorial work product protection. *Cf.* Fed.R.Crim.P. 16(a)(2) (emphasis added). Accordingly, we must determine the underlying intent and purpose of the rule.

¶ 21 In Colorado, "[t]he work product doctrine, although most frequently asserted as a bar to discovery in civil litigation, *applies with equal, if not greater, force in criminal prosecutions.*" *Dist. Court,* 790 P.2d at 335 (Colo.1990) (citing *U.S. v. Nobles,* 422 U.S. 225, 236, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)) (emphasis added). The purpose of the work product doctrine is to protect the mental impressions and legal analysis of the attorney, so that she may properly analyze the merits of and prepare for the disposition of her client's case. *People v. Martinez,* 970 P.2d 469, 475 (Colo. 1998). Accordingly, the doctrine is "designed to protect an attorney's mental processes reflected in 'interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible ... materials.' " *Id.* (quoting *Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947)).

¶ 22 Thus, "the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system." *Nobles,* 422 U.S. at 238, 95 S.Ct. 2160. Further, the doctrine is firmly rooted in a pragmatic understanding that a rule allowing for the discovery of work product would have a chilling effect on an attorney's incentive to analyze a case thoroughly and to memorialize that analysis in writing for later inspection and review. *Hickman,* 329 U.S. at 511, 67 S.Ct. 385 ("Were [work product] open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."); *see also Martinez,* 970 P.2d at 474 n. 12 (citing *Hickman* 's reasoning as the basis of the work product doctrine in Colorado).

¶ 23 While our research reveals no Colorado case on this issue, in light of the rationale behind Colorado's work product doctrine, we resolve the present case in accordance with the reasoning employed by the U.S. Supreme Court in addressing a similar issue under the Federal Rules of Civil Procedure in *F.T.C. v. Grolier,* 462 U.S. at 27, 103 S.Ct. 2209. In *Grolier,* the Supreme Court held that the federal civil work product protection, as set forth in Federal Rule of Civil Procedure 26(b)(3), survives the expiration of the litigation for which the work product was prepared because, consistent with its purpose, the rule applies the work product protection to any litigation. *Id.* at 25, 103 S.Ct. 2209. This reasoning was expounded upon by Justice Brennan, who concurred in this portion of the majority's holding. In his concurrence, Justice Brennan explained that the

---

able factual work product is compelled pursuant to Crim. P. 16(III)(e)(1) and 16(III)(f).

6. Although it appears that there is no settled legal term to describe the present issue, the U.S. Supreme Court has referred to the present issue as involving the "temporal scope" of the attorney work product doctrine. *F.T.C. v. Grolier, Inc.,* 462 U.S. 19, 25, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983). At least one legal scholar has characterized the issue as the potential "carry-over immunity" of the work product protection from one case to another. *See* D. Christopher Wells, *The Attorney Work Product Doctrine and Carry–Over Immunity: An Assessment of their Justifications,* 47 U. Pitt. L. Rev. 675 (1986).

survivability of the work product protection to apply in other, subsequent litigation was essential to the work of parties that are involved in recurring litigation, including government agencies:·

> It would be of a substantial benefit to an opposing party (and of corresponding detriment to an agency) if the party could obtain work product generated by the agency in connection with earlier, similar litigation against other persons. He would get the benefit of the agency's legal ... research and reasoning, enabling him to litigate 'on wits borrowed from the adversary.' Worse yet, he could gain insight into the agency's general strategic and tactical approach to deciding when suits are brought, how they are conducted, and on what terms they may be settled.

*Id.* at 30–31, 103 S.Ct. 2209 (1983) (Brennan, J., concurring in part and concurring in judgment) (citations omitted). Accordingly, Justice Brennan concluded, the federal civil work product doctrine protects work product from discovery in subsequent litigation because to hold otherwise would risk the same potential for " 'inefficiency, unfairness, ... sharp practices' and demoralization that *Hickman* warned against." *Id.* at 31, 103 S.Ct. 2209 (quoting *Hickman*, 329 U.S. at 511, 67 S.Ct. 385); *see also Frontier Ref., Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d 695, 703 (10th Cir.1998) ("[W]e conclude that the work product doctrine extends to subsequent litigation."); 2 Discovery Proceedings in Federal Court § 26:4 (3d ed. 2012) (collecting federal civil cases that generally hold that "materials prepared in anticipation of other litigation are subject to the work product doctrine" in subsequent cases).

¶ 24 In the criminal context, this rationale was echoed by the Michigan Court of Appeals in *People v. Gilmore*, 222 Mich.App. 442, 564 N.W.2d 158 (1997). On facts similar to the controversy presently before us, the *Gilmore* court held that Michigan's prosecutorial work product doctrine protected opinion work product that a defendant sought that was prepared by the prosecution in its investigation of the park ranger that ultimately cited and arrested the defendant. *Id.* at 166. In *Gilmore*, the prosecution initially investigated both the defendant and the arresting park ranger, but ultimately cleared the park ranger of any wrongdoing and only filed charges against the defendant. *Id.* at 161–62. While preparing his defense, the defendant sought to discover any documents held by the prosecution that related to its decision to not charge the park ranger. *Id.* After the prosecution refused to release its disposition report for the park ranger, the trial court granted the defendant's motion to compel disclosure. *Id.*

¶ 25 On appeal, the Michigan Court of Appeals reversed the order compelling disclosure because the requested document was protected work product and disclosure would violate the private sphere within which a prosecutor's office may validly exercise its constitutionally mandated prosecutorial discretion. *Id.* at 166. The *Gilmore* court reasoned that if it compelled disclosure of this work product, "[s]uch access [would] dilute the extent to which such documents candidly and thoroughly review the full range of considerations that must be evaluated by the prosecutor before deciding whether to charge a person with a crime." *Id.* at 166–67. Thus, the *Gilmore* court reasoned that if it released the disposition report in this case, in the future, a prosecutor would be less likely to memorialize her legal analysis and impressions of a case for fear that it might be discoverable in a different prosecution. *See id.*

¶ 26 We find the reasoning employed in both *Grolier* and *Gilmore* to be consistent with the purpose of Crim. P. 16(I)(e)(1), which is to provide prosecutors with a degree of privacy in which they may candidly and thoroughly evaluate legal claims and strategies. *See Martinez*, 970 P.2d at 474–75. If we were to hold that Crim. P. 16(I)(e)(1) applies only to protect opinion work product created in anticipation of the case before the court, then a prosecutor, when investigating a criminal episode in the future, would have a substantial incentive to refrain from candidly and thoroughly evaluating a case for fear that her mental impressions, legal analysis, and trial strategies would be discoverable by defendants in future cases. *Accord Grolier*, 462 U.S. at 31, 103 S.Ct. 2209 (Brennan, J.,

concurring in part and concurring in judgment) ("[Agencies] have an acute interest in keeping private the manner in which they conduct and settle their recurring legal disputes."). The result of such a rule would guarantee that "much of what is now put down in writing would remain unwritten" and "the cause of justice would be poorly served." *Hickman*, 329 U.S. at 511, 67 S.Ct. 385. Finally, such a rule would violate the spirit of the Colorado Rules of Criminal Procedure "to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay." Crim. P. 2. Accordingly, we refuse to reach such a conclusion.

¶ 27 In light of the vital purposes underlying Colorado's prosecutorial opinion work product protection, we reverse the order of the trial court below and hold that, pursuant to Crim. P. 16(I)(e)(1), all prosecutorial opinion work product prepared in anticipation of any potential prosecution is protected from discovery.[7]

### V. Conclusion

¶ 28 Having determined that Crim. P. 16(I)(e)(1) protects against the disclosure of a prosecutor's opinion work product, we make the rule absolute, reverse the trial court's discovery order, and remand this case to the trial court for a determination of whether the contested materials, prepared in connection with the investigation of Deputy Miller, constitute opinion work product as defined in Crim. P. 16(I)(e)(1).[8] This determination should be made through an ex parte, in camera review, as provided for under Crim. P. 16(III)(f).

7. In reaching this holding, however, we reaffirm our prior statement that the work product doctrine "is not absolute but rather is grounded in the realities of our adversary system." *Richardson v. Dist. Court*, 632 P.2d 595, 598 n. 3 (Colo. 1981) (favorably citing the holding from *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), that, in the federal civil context, the protection afforded by the work product doctrine may be overcome by a showing of "substantial need and an inability to obtain the equivalent information without undue hardship"). For example, exculpatory material that is contained in prosecutorial work product is "automatically discoverable." *People v. Vlassis*, 247 P.3d 196, 198 (Colo.2011); *see also United States v. DeMarco*, 407 F.Supp. 107, 111 n. 2 (C.D.Cal.1975) ("The fact that government memoranda are not discoverable under [the federal prosecutorial work product protection] cannot qualify the government's responsibilities under *Brady*. The very purpose of *Brady* was to make clear that the due process clause compels the production of [exculpatory] material not otherwise discoverable."). Additionally, the protection may be waived by "conduct or statements inconsistent with an intent to preserve the confidentiality of those records." ABA Standard 11–6.1(a), Commentary. Because such facts are not presently before us, we decline to apply the limits of Colorado's prosecutorial work product doctrine to this case. *See* 35 A.L.R.3d 412, § 25 (2012) (noting that whether materials should be protected as work product "is a question of fairness tempered by the basic concepts of our adversary system and the desirable aspects of pre-trial discovery").

8. We note that, as a matter of law, it is irrelevant to the work product determination that charges were never brought against Deputy Miller. Rather, the relevant inquiry is whether the materials contain "the opinions, theories, or conclusions, of the prosecuting attorney or members of his legal staff" and were prepared *in anticipation* of a criminal prosecution. Crim. P. 16(I)(e)(1); *Martinez*, 970 P.2d at 474; *see also Gilmore*, 564 N.W.2d at 165 (reasoning that investigation materials that did not result in criminal charges constitute work product because they were prepared "when litigation remained a genuine possibility").