1
 2026 CO 11 Jamale D. Townsell, Petitioner v. The People of the State of Colorado. Respondent No. 23SC924Supreme Court of Colorado, En BancFebruary 17, 2026
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 21CA2068
 
 
          
 Attorneys for Petitioner: Samler and Whitson, P.C. Hollis A.
 Whitson Denver, Colorado
 
 
          
 Attorneys for Respondent: Philip J. Weiser, Attorney General
 John T. Lee, First Assistant Attorney General Yaried Hailu,
 Assistant Attorney General Fellow Denver, Colorado
 
 
          
 Attorneys for Amicus Curiae Korey Wise Innocence Project:
 Wheeler Trigg O'Donnell LLP Clarissa M. Collier Nicole L.
 Jones Denver, Colorado
 
 
          
 Attorneys for Amicus Curiae Office of Alternate Defense
 Counsel: The Noble Law Firm, LLC Antony Noble Tara Jorfald
 Lakewood, Colorado Lynn Noesner Denver, Colorado
 
 
           Amicus
 Curiae Ramsey Lama, Esq., pro se: Cañon City, Colorado
 
 2
 
 
           HOOD
 JUSTICE
 
 3
 
          ¶1
 Jamale D. Townsell was convicted of various crimes for
 robbing a bank. Following an unsuccessful appeal, Townsell
 moved the district court for postconviction relief under
 Crim. P. 35(c), alleging ineffective assistance of trial
 counsel based on his attorney's alleged failure to
 properly investigate certain DNA evidence. The postconviction
 court summarily denied the motion without appointing counsel,
 and the majority of a division of the court of appeals
 affirmed. Because we agree with the division majority that
 Townsell failed to adequately allege prejudice, we affirm the
 judgment of the court of appeals.
 
 
          I.
 Facts and Procedural History
 
 
          ¶2
 In June 2013, an armed and masked man robbed the Bank of the
 West in Aurora. After jumping over the counter and pointing a
 handgun at one of two tellers, the man took over $1,000 in
 cash from the teller's drawer and stashed it in a bank
 bag, which also contained a Global Positioning System
 ("GPS") device.
 
 
          ¶3
 According to eyewitnesses to the robbery, the suspect was
 around five feet eight inches tall and left-handed. Security
 video footage also shows the suspect wearing a red bandana, a
 hat with eye and mouth holes cut into it so it could serve as
 a mask, and black shoes with white soles. He also had a phone
 duct taped to his arm and earbuds taped to his
 T-shirt.
 
 4
 
          ¶4
 The GPS device led the police to a car belonging to E.R.,
 Townsell's estranged wife. Upon searching the car, police
 officers found a black shoe with a white sole and a gun.
 Nearby, in the middle of the road, police found the bank bag
 that, among other things, contained the stolen money, a
 sweatshirt, a red bandana, the mask, pantyhose, gloves, and a
 shoe matching the one found in the car. Officers also
 obtained Townsell's cell phone records, which showed
 Townsell's phone had called E.R.'s phone shortly
 before and shortly after the robbery. And an expert testified
 at trial that Townsell's phone was near the bank when the
 robbery occurred.
 
 
          ¶5
 Forensic analysts tested the shoes, pantyhose, bandana, and
 mask, and the results matched Townsell's DNA. The results
 from the pantyhose, bandana, and right shoe showed a
 single-source profile; meaning, all of the DNA came from one
 person. Townsell's genetic profile was a complete match
 to these single-source profiles. Of the fifteen locations
 swabbed for potential DNA in the left shoe, thirteen matched
 Townsell's genetic profile, a result that, according to
 expert testimony at trial, was "more rare than 1 in 300
 billion." The mask's testing returned a mixed
 profile, with a major and minor contributor to the DNA
 makeup. The minor component left such little DNA it was
 "basically uninterpretable," but the major
 component was, once again, a match with Townsell's
 genetic profile.
 
 5
 
 The prosecution's expert testified that Townsell was the
 source of the DNA on each item.
 
 
          ¶6
 The other items seized-namely, the shirt, phone, earbuds,
 gloves, and sweatshirt-weren't tested.
 
 
          ¶7
 The prosecution charged Townsell with aggravated robbery and
 other offenses. During pretrial discovery, the prosecution
 disclosed a report detailing the DNA testing described above.
 Defense counsel later claimed he misunderstood the report and
 believed that the prosecution had tested only the pantyhose.
 About a month before trial, the prosecution sent defense
 counsel a second DNA report containing essentially the same
 information as the first. Defense counsel claimed he
 didn't read the second report until the fourth day of
 trial.
 
 
          ¶8
 During the trial, defense counsel objected to the admission
 of any DNA evidence other than the pantyhose test results,
 arguing lack of notice. Defense counsel subsequently
 disclosed that his entire trial strategy was based on an
 erroneous belief that the pantyhose contained the only DNA
 match to Townsell, which he claimed he could "deal
 with." Because the court concluded that the prosecution
 had, in fact, properly disclosed the test results, the court
 overruled the objection and admitted the test results into
 evidence.
 
 6
 
          ¶9
 Although defense counsel argued to the jury that the
 investigating officers knew there may have been an alternate
 suspect, given the disparity between Townsell (who is six
 feet two inches tall and right-handed) and the description of
 the robber (again, approximately five feet eight inches tall
 and seemingly left-handed), he presented no testimony in
 support of this theory. The jury found Townsell guilty as
 charged, and the court sentenced him to thirty-two years in
 the custody of the Department of Corrections.
 
 
          ¶10
 On direct appeal, a division of the court of appeals affirmed
 Townsell's convictions and sentence. People v.
 Townsell, No. 14CA1225, ¶ 1 (Apr. 5, 2018)
 ("Townsell I").
 
 
          ¶11
 Townsell later moved, pro se, for postconviction relief under
 Crim. P. 35(c), alleging ineffective assistance of trial
 counsel.[1] Townsell argued that "[Reasonable
 performance of counsel includes an adequate investigation of
 facts[,] . . . viable theories, and development of
 evidence," and counsel's complete
 
 7
 
 misunderstanding of the DNA report was "clear evidence
 he failed to properly investigate." Therefore,
 counsel's choices at trial could not be considered
 reasonable because he was not "informed of all available
 options" given his failure to adequately address the DNA
 evidence. This allegation of failure to investigate, Townsell
 contended, "necessitate[d] an evidentiary hearing."
 Townsell argued that, once counsel realized he'd
 misinterpreted the DNA reports, he should have requested a
 continuance so Townsell could (1) hire an independent expert
 to test evidence the prosecution had neglected and (2) better
 defend against DNA results used by the prosecution. He
 stated:
 
 
 [A]fter learning of new DNA [evidence] against defendant[,]
 defense counsel still proceeded to rush the trial in
 violation of defendant[']s right to due process. Had
 defense counsel requested a continuance after learning of
 additional DNA evidence[,] th[e]n a proper defense could have
 changed the outcome of this case.... With a continuance,
 counsel could have hired a DNA expert to counter the
 people[']s expe[r]t and could have had more effective
 cross-examination of the people's expert.
 
 
          ¶12
 The postconviction court denied Townsell's motion on its
 face without referring it to the Office of the Public
 Defender ("OPD"), finding that Townsell had failed
 to allege prejudice, as required by Strickland v.
 Washington, 466 U.S. 668, 687 (1984), because he
 didn't "identify any facts to explain" what
 "substantial evidence" his counsel might have found
 with further DNA testing or "how that substantial
 evidence would have overcome the substantial DNA evidence the
 prosecution offered at trial."
 
 8
 
          ¶13
 Townsell appealed the postconviction court's order, and
 the majority of a division of the court of appeals affirmed,
 concluding that Townsell hadn't explained how additional
 DNA testing could have overcome the weight of the evidence
 used to convict him. People v. Townsell, No.
 21CA2068, ¶¶ 19, 23 (Nov. 16, 2023)
 ("Townsell II"). On appeal, Townsell
 argued that additional DNA testing and a DNA expert's
 explanation would have revealed that untested items that were
 closer to the robber's skin (for example, the
 robber's shirt, the earbuds, and the phone taped to the
 shirt) would exculpate him because they wouldn't contain
 Townsell's DNA. Id. at ¶¶ 18-19. The
 division majority, however, concluded that this argument (1)
 overstated the evidence produced at trial for an alternate
 suspect;[2] (2) failed to explain how new DNA testing
 would overcome the evidence containing his DNA; and (3)
 failed to allege that a DNA expert would be available and
 able to testify consistently with his allegations.
 Id. at ¶¶ 18-20. Additionally, the
 division majority concluded there was no reason to believe
 any new DNA evidence would be more probative than the
 previously tested evidence. Id. at ¶ 17.
 
 9
 
          ¶14
 Judge Schutz dissented based on his belief that Townsell had
 alleged sufficient facts to warrant forwarding Townsell's
 motion to the OPD. Id. at ¶ 24 (Schutz, J.,
 dissenting). As Judge Schutz reasoned, a pro se incarcerated
 defendant "may not be in a position to fully develop the
 factual and legal basis for their petition"; therefore,
 they need only allege "viable facts that, if established
 at a hearing, would entitle them to relief."
 Id. at ¶ 29. Thus, Townsell's allegation
 that his counsel should have retained a DNA expert to uncover
 exculpatory evidence sufficed to warrant the appointment of
 postconviction counsel. Id. at ¶ 24. Judge
 Schutz inferred Townsell had asserted that additional DNA
 evidence would have bolstered Townsell's alternate
 suspect theory. Id. at ¶ 39.
 
 
          ¶15
 Townsell petitioned this court for certiorari review, which
 we granted.[3]
 
 10
 
          II.
 Analysis
 
 
          ¶16
 After identifying the standard of review, we examine Crim. P.
 35(c)'s standard for the appointment of counsel. We next
 discuss how a postconviction defendant must plead an
 ineffective-assistance-of-counsel claim under Crim. P. 35(c)
 and Strickland. Finally, we turn to the facts of
 this case and consider whether, given the standard for
 appointment of counsel and the two-pronged
 Strickland test, the postconviction court should
 have appointed counsel for Townsell.
 
 
          A.
 Standard of Review
 
 
          ¶17
 We review the division majority's interpretation of Crim.
 P. 35(c) de novo. Hunsaker v. People, 2021 CO 83,
 ¶ 16, 500 P.3d 1110, 1114. In doing so, we use the same
 canons that guide our interpretation of statutes. People
 v. Bueno, 2018 CO 4, ¶ 18, 409 P.3d 320, 325. We
 begin with Crim. P. 35(c)'s plain language, reading it
 consistently with its plain and ordinary meaning. People
 v. Steen, 2014 CO 9, ¶ 10, 318 P.3d 487, 490. If
 the language is clear, we apply it as written. People v.
 Angel, 2012 CO 34, ¶ 17, 277 P.3d 231, 235. If,
 however, the rule is unclear, "we must attempt to
 resolve any ambiguity so as to make our application of the
 rule consistent with the intent of the rule and fundamental
 purposes of the Colorado Rules of Criminal Procedure 'to
 provide for the just determination of criminal
 proceedings' and 'to secure simplicity in procedure,
 fairness in administration,
 
 11
 
 and the elimination of unjustifiable expense and
 delay.'" Id. (quoting Peterson v.
 People, 113 P.3d 706, 708 (Colo. 2005).
 
 
          B.
 The Standard for the Appointment of Counsel and for Granting
 a Hearing Under Crim. P. 35(c)
 
 
          ¶18
 Both the United States Constitution and the Colorado
 Constitution guarantee a criminal defendant's right to
 trial counsel. U.S. Const. amend. VI; Colo. Const.
 art. II, § 16.
 
 
          ¶19
 Although there is no similar right to postconviction
 counsel, there is "a limited statutory right to
 postconviction counsel for meritorious Crim. P. 35(c)
 motions." Silva v. People, 156 P.3d 1164, 1168
 (Colo. 2007) (explaining that this statutory right arises
 from a longstanding interpretation of the statutes that
 created and now govern the OPD, and the legislature's
 subsequent implied ratification of the right); see also
 Duran v. Price, 868 P.2d 375, 379 (Colo. 1994).
 
 
          ¶20
 Meritorious postconviction motions are those that aren't
 "wholly unfounded." Silva, 156 P.3d at
 1168. A motion isn't wholly unfounded if it contains at
 least one claim with arguable merit. People v.
 Segura, 2024 CO 70, ¶ 7, 558 P.3d 234, 237.
 
 
          ¶21
 In determining whether a defendant's motion has met this
 standard, Crim. P. 35(c)(3)(IV) directs courts to
 
 
 consider, among other things, whether the motion is timely .
 . ., whether it fails to state adequate factual or legal
 grounds for relief, whether it states legal grounds for
 relief that are not meritorious,
 
 12
 
 whether it states factual grounds that, even if true, do not
 entitle the party to relief, and whether it states factual
 grounds that, if true, entitle the party to relief, but the
 files and records of the case show to the satisfaction of the
 court that the factual allegations are untrue.
 
 
          ¶22
 If the court, based on those considerations, determines that
 the motion isn't wholly unfounded, and "[i]f the
 defendant has requested counsel be appointed in the motion,
 the court shall cause a complete copy of said motion to be
 served on the [OPD]." Crim. P. 35(c)(3)(V).
 
 
          ¶23
 Based on this plain language, the court should appoint
 postconviction counsel if the defendant has requested counsel
 and has presented at least one claim in his postconviction
 motion that isn't "wholly unfounded." See
 Segura, ¶ 35, 558 P.3d at 242. This is a low bar,
 but a bar nonetheless. Although we broadly construe a pro se
 defendant's pleadings, understanding that a pro se
 litigant may be unable "to articulate their argument
 like a lawyer," Jones v. Williams, 2019 CO 61,
 ¶ 5, 443 P.3d 56, 58, the rule still requires the
 defendant to provide adequate factual or legal grounds, which
 if true, would entitle the defendant to relief.
 
 
          ¶24
 Once appointed, the OPD typically will investigate the merits
 of the defendant's postconviction claims and decide if it
 will represent the defendant in the postconviction
 proceedings. Crim. P. 35(c)(3)(V). Under section 21-1-104(2),
 C.R.S. (2025), a public defender isn't required to pursue
 any remedies unless the public defender is "satisfied
 first that there is arguable merit to the proceeding."
 
 13
 
          ¶25
 After the OPD has entered an appearance in the case and both
 sides have filed their pleadings, "the court shall grant
 a prompt hearing on the motion unless, based on the
 pleadings, the court finds that it is appropriate to enter a
 ruling containing written findings of fact and conclusions of
 law." Crim. P. 35(c)(3)(V). At this stage, the court
 should no longer accept the allegations as true but must
 instead determine if the defendant has sufficiently proven
 his claims by a preponderance of the evidence. See People
 v. Naranjo, 840 P.2d 319, 325 (Colo. 1992).
 
 
          ¶26
 The standards for appointing postconviction counsel and
 holding an evidentiary hearing on a postconviction motion
 differ. The first-for appointment of counsel-requires the
 court to determine if the allegations, assuming they are
 true, have arguable merit. The second-for holding a
 hearing-requires the court to conduct a hearing unless
 "the motion, files, and record in the case clearly
 establish that the allegations presented in the
 defendant's motion are without merit and do not warrant
 postconviction relief." Ardolino v. People, 69
 P.3d 73, 77 (Colo. 2003) (emphasis added) ("Because
 relief for ineffective assistance of counsel requires a
 criminal defendant to prove both deficient representation and
 prejudice, denial of the motion without a hearing is
 justified if, but only if, the existing record establishes
 that the defendant's allegations, even if proven true,
 would fail to establish one or the other prong of the
 Strickland test."); see also People v.
 McDowell,
 
 14
 
 219 P.3d 332, 340 (Colo.App. 2009) (concluding that the
 postconviction court didn't err by denying the
 defendant's Crim. P. 35(c) motion alleging the
 ineffective assistance of counsel without a hearing because
 his claims were directly refuted by the trial record).
 However, here, we need not address whether Townsell is
 entitled to a hearing because we conclude in Part E below
 that his claim was wholly unfounded.
 
 
          C.
 Determining Arguable Merit: The Interplay of Strickland and
 the Appointment of Postconviction Counsel
 
 
          ¶27
 Townsell argues that because his
 ineffective-assistance-of-counsel claim rests on potentially
 exculpatory but untested DNA evidence, he neither can, nor
 should he have to, explain how the DNA evidence in question
 would undermine a court's confidence in the trial's
 outcome in his request for postconviction counsel. We
 disagree.
 
 
          ¶28
 Counsel is considered ineffective when their "conduct so
 undermined the proper functioning of the adversarial process
 that the trial cannot be relied on as having produced a just
 result." Ardolino, 69 P.3d at 76. To meet this
 standard, a defendant must show: (1) "counsel's
 performance was deficient"-meaning, "counsel's
 representation fell below an objective standard of
 reasonableness"; and (2) "the deficient performance
 prejudiced the defense"-meaning, there is "a
 reasonable probability that, but for counsel's
 unprofessional errors, the result of
 
 15
 
 the proceeding would have been different."
 Strickland, 466 U.S. at 687-88, 694; see also
 Ardolino, 69 P.3d at 76.
 
 
          ¶29
 Accordingly, to qualify for the appointment of postconviction
 counsel, a defendant's postconviction motion must provide
 allegations that, if true, would establish both prongs of the
 Strickland test. Silva, 156 P.3d at 1165.
 In doing so, the defendant should explain not only the
 deficiency that made his counsel ineffective but also how and
 why, based on that deficiency, there is a reasonable
 probability that the result of the proceeding would have been
 different. While a defendant need not use particular words,
 he must do more than make conclusory allegations. "A
 'conclusory' allegation is one '[e]xpressing a
 factual inference without stating the underlying facts on
 which the inference is based.'" Woodall v.
 Godfrey, 2024 COA 42, ¶ 33, 553 P.3d 249, 260
 (alteration in original) (quoting Conclusory,
 Black's Law Dictionary (11th ed. 2019)). If the defendant
 fails to do so, the court may determine the claim is wholly
 unfounded and that it need not appoint counsel. See
 People v. Garcia, 815 P.2d 937, 941 (Colo. 1991)
 (explaining that if the defendant fails to
 demonstrate prejudice, the postconviction court may deny his
 Crim. P. 35(c) claim on that basis alone).
 
 
          D.
 DNA Evidence in Strickland Evaluations
 
 
          ¶30
 Townsell urges us to be more lenient in fashioning a standard
 for appointment of counsel in postconviction cases such as
 his. While incarcerated,
 
 16
 
 he tells us, he could do little to demonstrate the prejudice
 caused by his trial counsel's failure to more critically
 evaluate the DNA evidence in his case. Townsell argues that
 the unusual nature of DNA evidence "places a special
 responsibility on the reviewing court" to appoint
 counsel to assist in developing claims premised on such
 evidence.[4]
 
 
          ¶31
 However, Townsell points to no source of Colorado law, and we
 have found none, that would suggest that a defendant alleging
 the ineffective assistance of counsel based on counsel's
 failure to investigate DNA evidence should be entitled to a
 different standard than that applied to other types of
 evidence. Therefore, when a postconviction defendant asserts
 that his trial counsel was ineffective based on a failure to
 investigate DNA evidence, he must still show prejudice under
 Strickland. See People v. Corson, 2016 CO
 33, ¶ 41, 379 P.3d 288, 296; cf. People v.
 Thompson, 2020 COA 117, ¶ 33, 485 P.3d 566, 572
 ("Crim. P. 35(c)(2)(V) permits a motion based on newly
 discovered evidence, but that section does not address or
 authorize the discovery of such evidence - DNA or
 otherwise.").
 
 17
 
          E.
 Application
 
 
          ¶32
 Townsell argues that his claim is not wholly unfounded and
 that the postconviction court and the division majority erred
 by requiring him to prove the merits of his
 ineffective-assistance-of-counsel claim-including,
 prejudice-to have counsel appointed. He asserts this was
 error because he can't prove prejudice without the DNA
 testing his counsel's deficient performance precluded.
 
 
          ¶33
 Townsell addressed the first prong of Strickland by
 alleging that his attorney failed to request a continuance to
 test all the seized items for potentially exculpatory DNA.
 This sufficiently alleged deficient performance.
 
 
          ¶34
 Townsell failed, however, to explain what additional DNA
 testing might reveal and specifically how it might have
 exculpated him. In his postconviction motion, he merely
 asserted that, had his attorney conducted further
 investigation, "he would have discovered substantial
 evidence of defendant's exclusion despite the new DNA
 evidence against Mr. Townsell." That single sentence is
 the entirety of his argument as to prejudice. And although,
 as we've explained, at this stage of postconviction
 proceedings, a defendant need not prove prejudice,
 he must provide more than a bare, conclusory assertion
 unsupported by any facts. People v. Mills, 163 P.3d
 1129, 1134 (Colo. 2007) ("The standard for making a
 successful ineffective assistance of counsel claim is very
 high, and it is a valid exercise of the court's duty to
 oversee the orderly administration of justice to require some
 factual
 
 18
 
 basis that the standard will be satisfied before appointing
 an attorney to investigate the claims." (citation
 omitted)). A defendant must allege some factual or
 legal basis upon which the court can find prejudice. See
 White v. Denver Dist. Ct., 766 P.2d 632, 635 (Colo.
 1988) (explaining that a defendant "need not set forth
 the evidentiary support for his allegations in his initial
 Crim. P. 35(c) motion; instead, a defendant need only assert
 facts that if true, would provide a basis for relief under
 Crim. P. 35").
 
 
          ¶35
 Townsell needed to explain not only what he thought the
 missing DNA testing might reveal, but also how, with that
 evidence, there was a reasonable probability that the outcome
 of his trial would have been different. In other words,
 Townsell needed to provide some basis, which if true, would
 explain how further investigation would have excluded him
 from the robbery given the strength of the evidence used to
 convict him-namely, his cell phone records and cell location,
 as well as the fact that his DNA was found on the shoes,
 pantyhose, bandana, and mask, all of which were found in or
 near the discarded bank bag. But he didn't. Townsell
 failed to allege any facts upon which the court could find
 that the prejudice prong of his claim had arguable merit. He
 simply said that further testing would exclude him. See
 Townsell II, ¶ 20. His motion focused on the nature
 of defense counsel's mistake but failed to include the
 potential prejudice the mistake caused.
 
 19
 
          ¶36
 Although in his dissent, Judge Schutz inferred a connection
 between untested DNA evidence and an alternate suspect, in
 Townsell's Crim. P. 35(c) motion, Townsell only asserted
 that further DNA testing would prove his exclusion
 but never the inclusion of another suspect. Townsell
 never alleged that there was an alternate suspect.
 
 
          ¶37
 Although Townsell didn't need to use any magic words, he
 needed to provide some explanation of how further
 investigation would have excluded him or how it would have
 overcome the substantial evidence introduced at trial against
 him. As it stands, his single, conclusory statement fails to
 satisfy Crim. P. 35(c)(3)(IV)'s low bar for alleging
 "adequate factual or legal grounds." See People
 v. Lopez, 12 P.3d 869, 872 (Colo.App. 2000). Therefore,
 these claims are wholly unfounded, and the postconviction
 court didn't err by denying Townsell's request for
 postconviction counsel.
 
 
          III.
 Conclusion
 
 
          ¶38
 We affirm the judgment of the court of appeals.
 
 20
 
          
 JUSTICE GABRIEL, joined by CHIEF JUSTICE MARQUEZ, concurring
 in part and dissenting in part.
 
 
          ¶39
 I agree with the majority's recitation of the applicable
 standards for the appointment of counsel and for granting a
 hearing under Crim. P. 35(c). Maj. op. ¶¶ 21-26. I
 also agree with the majority that the law does not create
 special rules for ineffective assistance of counsel claims
 involving allegations concerning the alleged failure to
 investigate DNA evidence. Id. at ¶ 31. As in
 all ineffective assistance of counsel cases, to obtain relief
 on an ineffective assistance of counsel claim concerning the
 investigation of DNA evidence, a defendant generally must
 satisfy the two-prong test adopted by the Supreme Court in
 Strickland v. Washington, 466 U.S. 668, 690, 694
 (1984). That test requires a showing that (1) counsel's
 acts or omissions were outside the acceptable range of
 professionally competent assistance; and (2) but for counsel
 errors, there is a reasonable probability that the result of
 the proceeding would have been different. Id.
 
 
          ¶40
 I part company with the majority, however, on the question of
 whether Jamale D. Townsell made sufficient allegations in his
 petition to warrant the appointment of counsel and a hearing
 on his Crim. P. 35(c) petition. Unlike the majority, I
 believe that he did. Indeed, I cannot discern what more
 Townsell could have alleged without actually conducting the
 neglected DNA testing and asserting the results. In my view,
 the majority's ruling imposes an impossible burden on
 
 21
 
 criminal defendants who are seeking postconviction relief-and
 particularly those who are proceeding pro se-and
 unnecessarily raises the standard for the appointment of
 counsel and the setting of a hearing on a Crim. P. 35(c)
 petition.
 
 
          ¶41
 Accordingly, I respectfully concur in part in and dissent in
 part from the majority's opinion in this case.
 
 
          I.
 Factual Background
 
 
          ¶42
 I need not repeat the factual and procedural background set
 forth in the majority opinion. Instead, I will generally
 limit my recitation of the facts to the relevant allegations
 contained in Townsell's Crim. P. 35(c) petition.
 
 
          ¶43
 I do, however, note at the outset that substantial evidence
 in this case tended to suggest that an alternate suspect,
 namely, the brother of Townsell's estranged wife,
 committed the robbery at issue. Most notably, witnesses
 described the robber as predominantly left-handed and five
 feet seven inches to five feet nine inches in height.
 Townsell is right-handed and six feet two inches tall. The
 brother, in contrast, matched the description of the robber.
 Moreover, although certain items alleged to be associated
 with the robber were tested, many others, including a number
 of items that the robber wore closest to his body, were not.
 
 
          ¶44
 Townsell's pro se Crim. P. 35(c) petition consisted of a
 fully completed Form 4 (four pages) plus an attachment (five
 single-spaced, typed pages) detailing at great length the
 grounds underlying his petition.
 
 22
 
          ¶45
 As pertinent here, Townsell alleged that four weeks before
 his scheduled trial, the prosecution disclosed to defense
 counsel additional DNA evidence that the prosecution planned
 to admit at trial. Townsell alleged that at that time, his
 counsel expressed that he had no knowledge of additional DNA
 evidence, other than that which was found on a pair of
 pantyhose, and that counsel was unconcerned about the
 pantyhose because no one had identified them as having been
 used in the robbery. According to Townsell, counsel expressed
 concern about the allegedly newly produced DNA evidence but
 proceeded to "rush the trial" in violation of
 Townsell's due process rights.
 
 
          ¶46
 Townsell further alleged that defense counsel had erred in
 thinking that Townsell's DNA was found only on the
 pantyhose (evidence in the record demonstrated that counsel
 had been advised earlier that Townsell's DNA was found on
 other items). And as a result of the fact that counsel was
 uninformed about the evidence in the case, Townsell asserted
 that counsel was unable to make a professionally reasonable
 decision as to whether to present mitigating evidence.
 
 
          ¶47
 Specifically, Townsell alleged, "[C]ase law rejects the
 notion that a strategic decision can be reasonable, when this
 attorney has failed to investigate his options and make
 reasonable possible mitigating evidence regarding additional
 DNA evidence documentation, but [defense counsel]
 inexplicably failed to follow up with further
 investigation."
 
 23
 
          ¶48
 Townsell then expressly asserted that he was prejudiced by
 counsel's deficient conduct: "Had he [i.e., counsel]
 done so [i.e., investigate further the DNA evidence], he
 would have discovered substantial evidence of defendant's
 exclusion despite the new DNA evidence against Mr.
 Townsell."
 
 
          ¶49
 Finally, Townsell alleged, "With a continuance, counsel
 could have hired a DNA expert to counter the peoples expect
 [sic] and could have had more effective cross-examination of
 the people's expert."
 
 
          ¶50
 Although Townsell is not an attorney, the import of his
 allegations was clear and unmistakable: his counsel
 "missed the DNA report" that had been provided and
 did not properly investigate the DNA evidence. Had counsel
 done so, he would have discovered substantial evidence that
 tended to show that Townsell was not the robber (and, by
 necessary implication, that someone else was).
 
 
          II.
 Analysis
 
 
          ¶51
 I begin by briefly outlining the applicable standards
 governing the appointment of counsel and the setting of a
 hearing for purposes of Crim. P. 35(c). I then apply those
 principles to the facts presented.
 
 
          A.
 Crim. P. 35(c)
 
 
          ¶52
 Crim. P. 35(c)(3)(IV) and (V) set forth the procedures
 governing petitions for postconviction review, including
 referrals to the Office of the Public Defender and
 
 24
 
 the setting of hearings. We succinctly summarized the import
 of these provisions in People v. Segura, 2024 CO 70,
 ¶ 4, 558 P.3d 234, 236:
 
 
 Under paragraph (IV), if the court concludes that the motion,
 the record, and the file show that the defendant is not
 entitled to relief, it must deny the motion without
 forwarding a copy to the prosecution and the Office of the
 Public Defender ("OPD"). Crim. P. 35(c)(3)(IV). But
 if the court does not so conclude, then paragraph (V)
 requires the court to forward a copy of the motion to the
 prosecution and, if the motion requests the appointment of
 counsel, then also to the OPD. Crim. P. 35(c)(3)(V). The OPD
 must then file a response within forty-nine days indicating
 whether it has a conflict of interest and, if not, whether it
 intends to enter its appearance and whether it needs more
 time to investigate the defendant's claims. Id.
 If the OPD enters its appearance, it must include in its
 response any additional claims that have arguable merit.
 Id. After the motion (as supplemented by the OPD)
 has been fully briefed, an evidentiary hearing must be held
 unless the court finds it appropriate to dispose of the
 motion without a hearing. Id.
 
 
          ¶53
 We further explained:
 
 
 Thus, upon its initial review of a Crim. P. 35(c) motion
 containing a request for postconviction counsel, the court
 must either deny the motion and thus all of the claims, or
 not deny the motion and thus none of the claims-there is no
 halfway option. And if the court denies all of the claims, it
 must enter written findings of fact and conclusions of law
 without taking further action. But if the court denies none
 of the claims, it must grant the request for postconviction
 counsel and forward a complete copy of the motion to the
 prosecution and the OPD. The OPD must then decide which
 claims (if any) lack arguable merit and should be abandoned,
 which arguably meritorious claims (if any) should be
 supplemented, and which new claims (if any) have arguable
 merit and should be added. The parties must thereafter brief
 any arguably meritorious claims, including those supplemented
 and added.
 
 
 Segura, ¶ 26, 558 P.3d at 240 (footnotes
 omitted).
 
 25
 
          ¶54
 In addition to the foregoing, we have made clear that
 "[p]leadings by pro se litigants must be broadly
 construed to ensure that they are not denied review of
 important issues because of their inability to articulate
 their argument like a lawyer." Jones v.
 Williams, 2019 CO 61, ¶5, 443 P.3d 56, 58.
 
 
          B.
 Application
 
 
          ¶55
 Applying the foregoing principles here, I would conclude that
 Townsell pleaded sufficient facts in his pro se Crim. P.
 35(c) petition to mandate the appointment of counsel and the
 setting of a hearing on his petition.
 
 
          ¶56
 As noted above, in a detailed petition, Townsell alleged that
 his counsel had "missed" the DNA report that he had
 been given and therefore did not conduct an appropriate
 investigation as to such evidence. To the contrary, according
 to Townsell, counsel believed that the only DNA evidence at
 issue in the case had been found on pantyhose that were not
 even involved in the robbery. Accordingly, counsel did not
 believe that DNA evidence would pose a problem at trial. And
 then, when counsel learned about what he believed to be new
 DNA evidence, he did not seek an opportunity to investigate
 that evidence. Instead, he proceeded to "rush the
 trial" without conducting a thorough investigation and,
 in Townsell's view, uninformed as to the evidence that
 was to be presented by the prosecution. This, in turn,
 rendered counsel unable to make reasoned strategic decisions
 as to potentially available mitigating DNA evidence.
 
 26
 
          ¶57
 Based on the foregoing, Townsell expressly asserted that he
 was prejudiced by counsel's deficient conduct.
 Specifically, as noted above, Townsell alleged, "Had
 [counsel] done so [i.e., investigate further the DNA
 evidence], he would have discovered substantial evidence of
 defendant's exclusion despite the new DNA evidence
 against Mr. Townsell." And Townsell further contended,
 "With a continuance, counsel could have hired a DNA
 expert to counter the peoples expect [sic] and could have had
 more effective cross-examination of the people's
 expert."
 
 
          ¶58
 The sum and substance of Townsell's pro se allegations
 were that (1) counsel's performance in missing the DNA
 report and then not conducting a proper investigation
 concerning the DNA evidence in the case was deficient conduct
 under Strickland; and (2) but for counsel's
 unprofessional conduct, the result of the trial would
 probably have been different (i.e., Townsell was prejudiced
 under Strickland's second prong) because had
 counsel performed properly, he would have discovered
 substantial evidence that tended to show that Townsell was
 not the robber (and that someone else was).
 
 
          ¶59
 I believe that these are specific (and not conclusory)
 factual allegations as to both prongs of Strickland,
 and they were sufficient to establish a basis for referring
 the matter to the OPD.
 
 
          ¶60
 Notwithstanding the foregoing, the majority concludes that
 Townsell did not adequately allege prejudice-even to warrant
 a referral to counsel. Maj. op.
 
 27
 
 ¶¶ 1, 34-37. In the majority's view, a pro se
 defendant like Townsell in a case like this one must explain
 (1) what further DNA testing might reveal and how it might
 have exculpated him; (2) how, with that evidence, there was a
 reasonable probability that his trial's outcome would
 have been different (i.e., how further investigation would
 have excluded the defendant from the robbery, given the
 strength of the evidence used to convict him); and (3) how
 further DNA testing would have proved not only the
 defendant's exclusion but another suspect's
 inclusion. See id. at ¶¶ 34-37. In my
 view, however, no attorney, much less a pro se defendant,
 could have made such allegations without actually conducting
 the DNA testing that the defense believes would exonerate the
 defendant.
 
 
          ¶61
 The obligation that the majority imposes on Townsell is
 contrary to the fact that Crim. P. 35(c)(3)(IV) and (V)
 establish a pleading standard. A petitioner seeking
 postconviction relief need not plead all of their evidence.
 Nor must they prove their case. They need only plead
 sufficient facts that, if true, would entitle them to relief.
 See Ardolino v. People, 69 P.3d 73, 77 (Colo. 2003)
 (observing that a Crim. P. 35(c) motion alleging ineffective
 assistance of counsel may be denied without a hearing
 "if, but only if, the existing record establishes that
 the defendant's allegations, even if proven true, would
 fail to establish one or the other prong of the
 Strickland test"). Moreover, as noted above,
 Crim. P. 35(c) makes clear that a hearing will occur if a
 petitioner sets forth a claim that has arguable merit.
 
 28
 
          ¶62
 Although the majority purports to acknowledge that at this
 stage of the proceedings, a defendant need not prove
 prejudice, Maj. op. ¶ 34, the majority's opinion
 requires the defendant to plead substantial specific evidence
 that would, in fact, allow the defendant not only to prove
 their case but also to undermine the prosecution's
 evidence at trial, notwithstanding the fact that such
 evidence generally will not be available to the defendant.
 
 
          ¶63
 Alternatively, if the majority was, in fact, merely
 attempting to set forth minimum pleading requirements, then,
 although it claims otherwise, see id. at ¶ 37,
 its opinion simply quibbles with the words that Townsell, a
 pro se party, used to establish prejudice, thereby requiring
 him to assert a litany of "magic words" not
 mandated by Crim. P. 35(c). By way of example, the majority
 faults Townsell for asserting only that further DNA testing
 would have excluded him and not that it would have included
 someone else. See id. at ¶ 36. And the majority
 further faults Townsell for not expressly alleging
 that there was an alternate suspect. See id. But as
 noted above, the import of Townsell's pro se allegations
 was clear and unmistakable: he was not the robber and, by
 necessary implication, someone else was. In my view, the
 majority is, in fact, requiring a pro se petitioner to recite
 certain "magic words" to establish the requisite
 prejudice.
 
 
          ¶64
 And the majority's imposition of such a requirement is
 particularly troubling here because Form 4, which pro se
 petitioners like Townsell are required
 
 29
 
 to use, nowhere requires the petitioner to identify how they
 were prejudiced. Thus, in this case, Townsell alleged
 more than was required of him. (If pro se
 petitioners are going to be required to make substantial
 allegations of prejudice, as the majority seems to suggest,
 then I would respectfully encourage the court's Rules of
 Criminal Procedure Committee to consider revising Form 4 to
 give pro se petitioners more adequate notice of that
 requirement.)
 
 
          ¶65
 Finally, the standard that the majority enforces today
 neglects our longstanding mandate that "[p]leadings by
 pro se litigants must be broadly construed to ensure that
 they are not denied review of important issues because of
 their inability to articulate their argument like a
 lawyer." Jones, ¶ 5, 443 P.3d at 58. Here,
 the majority not only holds Townsell to the standard of
 learned counsel but also appears to have imposed on him (and
 other similarly situated Crim. P. 35(c) petitioners) a burden
 that even lawyers would likely find insurmountable.
 Specifically, for the reasons noted above, under the
 majority's rule, it appears that petitioners like
 Townsell are required to plead their evidence, and if they do
 not do so, then they are subject to having their petitions
 summarily dismissed. And this is so even though, particularly
 in cases like this one, most petitioners will never be able
 to plead their evidence absent the DNA investigation and
 testing that they claim did not occur but should have
 occurred. I cannot agree that Crim. P. 35(c) sets so high a
 bar.
 
 30
 
          III.
 Conclusion
 
 
          ¶66
 For these reasons, although I agree with the majority's
 recitation of the applicable legal standard and with its view
 that the law does not establish unique rules for ineffective
 assistance of counsel cases involving allegations of a
 failure to investigate DNA evidence, I do not agree with the
 application of those principles to the facts of this case.
 Instead, in my view, Townsell alleged sufficient facts to
 warrant the postconviction court's referring this matter
 to counsel for further review and the setting of a hearing.
 His substantial pro se allegations were by no means
 conclusory. Nor were his claims wholly unfounded.
 
 
          ¶67
 Accordingly, I respectfully concur in part in and dissent in
 part from the majority's opinion in this case.
 
 
 ---------
 
 
 Notes:
 
 
 [1] To apply for postconviction relief,
 Townsell, like all pro se defendants seeking Crim. P. 35(c)
 relief, filled out Form 4. "Form 4 is a standardized
 document that appears in the appendix to the Colorado Rules
 of Criminal Procedure." People v. Stanley, 169
 P.3d 258, 260 (Colo.App. 2007). It requires defendants to
 check the applicable grounds for the motion from a list and
 to attach pages stating the grounds and facts supporting each
 claim. It specifies that a defendant must include "each
 and every fact you feel supports that claim" and warns
 in all caps that" [i]f you do not raise all claims here,
 the court may not have to entertain later motions for similar
 relief." Appendix to the Colo. Rules of Crim. Proc.,
 Form 4, Petition for Postconviction Relief Pursuant to Crim.
 P. 35(c).
 
 
 [2] After defense counsel attempted to
 state during closing arguments that there was an alternate
 suspect, the parties had a bench conference during which the
 court stated that "there was no testimony to support the
 alternate suspect theory" and "defense counsel was
 only allowed to argue that the police had 'notice'
 that there might be an alternate suspect given the disparity
 between the witnesses' descriptions of the robber's
 height and Townsell's height." Townsell II,
 ¶ 18.
 
 
 [3] We granted certiorari to review the
 following issues:
 
 
 1. Whether the standard for appointment of counsel
 under Criminal Rule of Procedure 35(c) differs from the
 standard for granting a hearing.
 
 
 2. Whether an indigent pro se petitioner alleging
 ineffective assistance of counsel for failure to investigate
 DNA evidence must specify how exculpatory DNA evidence would
 undermine confidence in the conviction to sustain a Rule
 35(c) motion.
 
 
 3. Whether petitioner is entitled to postconviction
 counsel and a hearing to develop his claim that trial counsel
 rendered ineffective assistance of counsel by failing to
 investigate DNA evidence.
 
 
 [4] In 2023, the Colorado legislature
 enacted a statute titled, "Content of application for
 DNA testing," which allows a court to order DNA testing
 if "[i]t finds a reasonable probability that the
 petitioner would not have been convicted if favorable results
 had been obtained through DNA testing at the time of the
 original prosecution." Ch. 15, sec. 3, §
 18-1-413(1)(a), 2023 Colo. Sess. Laws 44, 45. Therefore, if a
 defendant wants DNA testing, there is an avenue at his
 disposal, even if he can't meet Strickland or
 doesn't assert an ineffective-assistance-of-counsel
 claim.
 
 
 ---------